IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| CHRISTOPHER GRAHAM and ELLEN RUSSO, on Behalf of Themselves and All Others Similarly Situated,<br><br>Plaintiffs,<br><br>vs.<br><br>BMO HARRIS BANK, N.A., NATIONAL BANK OF CALIFORNIA, N.A., FIRST INTERNATIONAL BANK & TRUST, a North Dakota State-Chartered Bank, FIRST PREMIER BANK, a South Dakota State-Chartered Bank, MISSOURI BANK AND TRUST, a Missouri State-Chartered Bank, and NORTH AMERICAN BANKING COMPANY, a Minnesota State-Chartered Bank,<br><br>Defendants. | CIVIL ACTION NO. 3:13-CV-01460-WWE<br><br><br><br><br><br><br><br><br><br><br><br><br><br>DATED: OCTOBER 24, 2013 |

## RICO CASE STATEMENT PURSUANT TO STANDING ORDER IN CIVIL RICO CASES

Plaintiffs, Christopher Graham and Ellen Russo (collectively, "Plaintiffs"), individually and on behalf of all persons similarly situated, hereby submit this RICO Case Statement pursuant to the Standing Order in Civil RICO Cases in the District of Connecticut.

1. State whether the alleged unlawful conduct is in violation of 18 U.S.C. Sections 1962(a), (b), (c), and/or (d).

   **RESPONSE: The Complaint alleges violations of 18 U.S.C. §§ 1962(c) and (d). The alleged wrongful conduct is in violation of 18 U.S.C. § 1962(c) because BMO Harris Bank, N.A., First International Bank & Trust, First Premier Bank, National Bank of California, Missouri Bank and Trust, and North American Banking Company (collectively "Defendants"), conducted and participated, directly and indirectly, in**

the conduct of an enterprise's affairs through the collection of unlawful debts, and in violation 18 U.S.C. § 1962(d), because Defendants conspired to do the same.

2. List each defendant and state the alleged misconduct and basis of liability of each defendant.

   **RESPONSE:** **The Defendants are BMO Harris Bank, N.A. ("BMO"), First International Bank & Trust ("First International"), First Premier Bank ("First Premier"), National Bank of California ("NBC"), Missouri Bank and Trust ("MBT"), and North American Banking Company ("NABC").**

   **BMO's alleged misconduct includes the following:**

   - **BMO uses its position as an Originating Depository Financial Institution ("ODFI") to knowingly "originate" illegal payday loan debits and credits in the mainstream electronic payments system known as the "Automatic Clearing House Network" or "ACH Network."**

   - **BMO originates illegal payday loan debits and credits on behalf of online "payday" lenders, which are banned from operating in at least 13 states, including Connecticut, and the District of Columbia.**

   - **BMO, as an ODFI in the ACH Network, is bound by rules and regulations set forth by the Office of the Comptroller of the Currency, the Federal Deposit Insurance Corporation, and rules governing operation of the ACH Network ("NACHA Rules"). NACHA Rules provide that when an ODFI transmits an ACH entry, it is warranting to other participants in the ACH Network that the entry has been properly authorized. An entry is unauthorized when it is originated on behalf of an entity that engages in activities which violate state or federal law.**

   - **BMO has used its role within the ACH Network to debit the bank accounts of persons residing in states which ban payday lending on behalf of illegal online payday lenders (or third-party processing companies working on their behalf).**

   - **BMO is liable under 18 U.S.C. § 1962(c) because it has conducted and participated in the collection of unlawful debts as defined by 18 U.S.C. § 1961(6) by originating debit entries which are unenforceable under state usury laws and the usurious interest rates are at least twice the enforceable rate.**

   - **In reaching agreements with illegal online payday lenders (or third-party processing companies working on their behalf) to originate debit entries on their behalf, BMO is also liable under 18 U.S.C. § 1962(d) for conspiring to**

2

**conduct and participate in the conduct of the affairs of the ACH Network through the collection of unlawful debts.**

First International's alleged misconduct includes the following:

- **First International uses its position as an ODFI to knowingly "originate" illegal payday loan debits and credits in the mainstream electronic payments system known as the "Automatic Clearing House Network" or "ACH Network."**

- **First International originates illegal payday loan debits and credits on behalf of online "payday" lenders, which are banned from operating in at least 13 states, including Connecticut, and the District of Columbia.**

- **First International, as an ODFI in the ACH Network, is bound by rules and regulations set forth by the Office of the Comptroller of the Currency, the Federal Deposit Insurance Corporation, and rules governing operation of the ACH Network ("NACHA Rules"). NACHA Rules provide that when an ODFI transmits an ACH entry, it is warranting to other participants in the ACH Network that the entry has been properly authorized. An entry is unauthorized when it is originated on behalf of an entity that engages in activities which violate state or federal law.**

- **First International has used its role within the ACH Network to debit the bank accounts of persons residing in states which ban payday lending on behalf of illegal online payday lenders (or third-party processing companies working on their behalf).**

- **First International is liable under 18 U.S.C. § 1962(c) because it has conducted and participated in the collection of unlawful debts as defined by 18 U.S.C. § 1961(6) by originating debit entries which are unenforceable under state usury laws and the usurious interest rates are at least twice the enforceable rate.**

- **In reaching agreements with illegal online payday lenders (or third-party processing companies working on their behalf) to originate debit entries on their behalf, First International is also liable under 18 U.S.C. § 1962(d) for conspiring to conduct and participate in the conduct of the affairs of the ACH Network through the collection of unlawful debts.**

First Premier's alleged misconduct includes the following:

- **First Premier uses its position as an ODFI to knowingly "originate" illegal payday loan debits and credits in the mainstream electronic payments system known as the "Automatic Clearing House Network" or "ACH Network."**

3

- **First Premier originates illegal payday loan debits and credits on behalf of online "payday" lenders, which are banned from operating in at least 13 states, including Connecticut, and the District of Columbia.**

- **First Premier, as an ODFI in the ACH Network, is bound by rules and regulations set forth by the Office of the Comptroller of the Currency, the Federal Deposit Insurance Corporation, and rules governing operation of the ACH Network ("NACHA Rules"). NACHA Rules provide that when an ODFI transmits an ACH entry, it is warranting to other participants in the ACH Network that the entry has been properly authorized. An entry is unauthorized when it is originated on behalf of an entity that engages in activities which violate state or federal law.**

- **First Premier has used its role within the ACH Network to debit the bank accounts of persons residing in states which ban payday lending on behalf of illegal online payday lenders (or third-party processing companies working on their behalf).**

- **First Premier is liable under 18 U.S.C. § 1962(c) because it has conducted and participated in the collection of unlawful debts as defined by 18 U.S.C. § 1961(6) by originating debit entries which are unenforceable under state usury laws and the usurious interest rates are at least twice the enforceable rate.**

- **In reaching agreements with illegal online payday lenders (or third-party processing companies working on their behalf) to originate debit entries on their behalf, First Premier is also liable under 18 U.S.C. § 1962(d) for conspiring to conduct and participate in the conduct of the affairs of the ACH Network through the collection of unlawful debts.**

**NBC's alleged misconduct includes the following:**

- **NBC uses its position as an ODFI to knowingly "originate" illegal payday loan debits and credits in the mainstream electronic payments system known as the "Automatic Clearing House Network" or "ACH Network."**

- **NBC originates illegal payday loan debits and credits on behalf of online "payday" lenders, which are banned from operating in at least 13 states, including Connecticut, and the District of Columbia.**

- **NBC, as an ODFI in the ACH Network, is bound by rules and regulations set forth by the Office of the Comptroller of the Currency, the Federal Deposit Insurance Corporation, and rules governing operation of the ACH Network ("NACHA Rules"). NACHA Rules provide that when an ODFI transmits an ACH entry, it is warranting to other participants in the ACH Network that the entry has been properly authorized. An entry is unauthorized when it is**

4

- **originated on behalf of an entity that engages in activities which violate state or federal law.**

- **NBC has used its role within the ACH Network to debit the bank accounts of persons residing in states which ban payday lending on behalf of illegal online payday lenders (or third-party processing companies working on their behalf).**

- **NBC is liable under 18 U.S.C. § 1962(c) because it has conducted and participated in the collection of unlawful debts as defined by 18 U.S.C. § 1961(6) by originating debit entries which are unenforceable under state usury laws and the usurious interest rates are at least twice the enforceable rate.**

- **In reaching agreements with illegal online payday lenders (or third-party processing companies working on their behalf) to originate debit entries on their behalf, NBC is also liable under 18 U.S.C. § 1962(d) for conspiring to conduct and participate in the conduct of the affairs of the ACH Network through the collection of unlawful debts.**

**MBT's alleged misconduct includes the following:**

- **MBT uses its position as an ODFI to knowingly "originate" illegal payday loan debits and credits in the mainstream electronic payments system known as the "Automatic Clearing House Network" or "ACH Network."**

- **MBT originates illegal payday loan debits and credits on behalf of online "payday" lenders, which are banned from operating in at least 13 states, including Connecticut, and the District of Columbia.**

- **MBT, as an ODFI in the ACH Network, is bound by rules and regulations set forth by the Office of the Comptroller of the Currency, the Federal Deposit Insurance Corporation, and rules governing operation of the ACH Network ("NACHA Rules"). NACHA Rules provide that when an ODFI transmits an ACH entry, it is warranting to other participants in the ACH Network that the entry has been properly authorized. An entry is unauthorized when it is originated on behalf of an entity that engages in activities which violate state or federal law.**

- **MBT has used its role within the ACH Network to debit the bank accounts of persons residing in states which ban payday lending on behalf of illegal online payday lenders (or third-party processing companies working on their behalf).**

- **MBT is liable under 18 U.S.C. § 1962(c) because it has conducted and participated in the collection of unlawful debts as defined by 18 U.S.C. §**

> 1961(6) by originating debit entries which are unenforceable under state usury laws and the usurious interest rates are at least twice the enforceable rate.

> - **In reaching agreements with illegal online payday lenders (or third-party processing companies working on their behalf) to originate debit entries on their behalf, MBT is also liable under 18 U.S.C. § 1962(d) for conspiring to conduct and participate in the conduct of the affairs of the ACH Network through the collection of unlawful debts.**

**NABC's alleged misconduct includes the following:**

> - **NABC uses its position as an ODFI to knowingly "originate" illegal payday loan debits and credits in the mainstream electronic payments system known as the "Automatic Clearing House Network" or "ACH Network."**

> - **NABC originates illegal payday loan debits and credits on behalf of online "payday" lenders, which are banned from operating in at least 13 states, including Connecticut, and the District of Columbia.**

> - **NABC, as an ODFI in the ACH Network, is bound by rules and regulations set forth by the Office of the Comptroller of the Currency, the Federal Deposit Insurance Corporation, and rules governing operation of the ACH Network ("NACHA Rules"). NACHA Rules provide that when an ODFI transmits an ACH entry, it is warranting to other participants in the ACH Network that the entry has been properly authorized. An entry is unauthorized when it is originated on behalf of an entity that engages in activities which violate state or federal law.**

> - **NABC has used its role within the ACH Network to debit the bank accounts of persons residing in states which ban payday lending on behalf of illegal online payday lenders (or third-party processing companies working on their behalf).**

> - **NABC is liable under 18 U.S.C. § 1962(c) because it has conducted and participated in the collection of unlawful debts as defined by 18 U.S.C. § 1961(6) by originating debit entries which are unenforceable under state usury laws and the usurious interest rates are at least twice the enforceable rate.**

> - **In reaching agreements with illegal online payday lenders (or third-party processing companies working on their behalf) to originate debit entries on their behalf, NABC is also liable under 18 U.S.C. § 1962(d) for conspiring to conduct and participate in the conduct of the affairs of the ACH Network through the collection of unlawful debts.**

3. List the alleged wrongdoers, other than the defendant(s) listed above, and state the alleged misconduct of each wrongdoer.

   **RESPONSE: Wrongdoers include illegal online payday lenders, many based offshore or purportedly on Indian reservations, that make use of the Internet to circumvent the laws of at least 13 states and the District of Columbia that have either banned payday loans directly, or effectively banned them by operation of an interest rate cap (the "banned states"). Other wrongdoers may include the borrowers' own banks, known as Receiving Depository Financial Institutions ("RDFI") that process debits and credits to their accountholder's account.**

4. List the alleged victims and state how each victim was allegedly injured.

   **RESPONSE: The victims are Plaintiffs, who are residents of Connecticut who took out loans over the Internet carrying interest rates in excess of 400% from online payday lenders. Plaintiffs were injured by paying significantly higher interest rates than those permissible under Connecticut's Usury Statute, which caps interest rates on loans at 12% annually.**

   **The victims are also a putative class of persons residing within the banned states who were victimized because their bank accounts were debited via an ACH entry originated by BMO, First International, First Premier, NBC, MBT, and/or NABC, as an ODFI, on behalf of illegal online payday lenders in repayment of loans which were illegal under the law of their respective state at the time of the debit ("class"). The victims are also a putative sub-class of Connecticut residents who were victimized because their bank accounts were debited via an ACH entry originated by BMO, First International, First Premier, NBC, MBT, and/or NABC, as an ODFI, on behalf of illegal online payday lenders in repayment of loans which were illegal under Connecticut law ("Connecticut sub-class").**

5. Describe in detail the pattern of racketeering activity or collection of unlawful debts alleged for each RICO claim. A description of the pattern of racketeering shall include the following information:

   **RESPONSE: As explained below in part (f), Plaintiffs' claims are based on the collection of an unlawful debt and are not independently conditioned on establishing a pattern of racketeering activity.**

   a. List the alleged predicate acts and the specific statutes which were allegedly violated;

      **RESPONSE: The alleged predicate acts are the collection of unlawful debts in violation of 18 U.S.C. § 1962(c). "Unlawful Debt" is defined under 18 U.S.C. § 1961(6) as a "debt . . . which is unenforceable under State or Federal law in whole or in part as to principal or interest because of the laws relating**

7

to usury, and . . . which was incurred in connection with the business of lending money or a thing of value at a rate usurious under State or Federal law, where the usurious rate is at least twice the enforceable rate[.]"

b. Provide the dates of the predicate acts, the participants in the predicate acts and a description of the facts surrounding the predicate acts;

**RESPONSE: On or about March 14, 2013, Plaintiff Graham applied for and received a payday loan in the amount of $350 from an illegal online payday lender (Spot On Loans) by completing an application on its website. On or about April 17, 2013, Plaintiff Graham applied for and received an additional payday loan in the amount of $500 from Spot On Loans. On or about June 3, 2013, Plaintiff Graham applied for and received an additional payday loan in the amount of $350 from Spot On Loans. Spot On Loans charged 30%, or $30 per every $100 borrowed, approximately every two weeks.**

**On or about July 12, 2013, Spot On Loans initiated two debit transactions from Plaintiff Graham's checking account in Connecticut through the ACH Network. The majority of these payments were applied to interest on the usurious loan. The ODFI originating these transactions on behalf of the illegal online payday lender was NBC.**

**On or about March 15, 2013, Plaintiff Graham applied for and received a payday loan in the amount of $800 from another illegal online payday lender (Silver Cloud Financial) by completing an application on its website. Silver Cloud Financial charged 30%, or $30 per every $100 borrowed, approximately every two weeks.**

**On or about July 12, 2013, Silver Cloud Financial initiated a debit transaction from Plaintiff Graham's checking account in Connecticut through the ACH Network. The ODFI originating this transaction on behalf of the illegal online payday lender was MBT.**

**On or about April 15, 2013, Plaintiff Graham applied for and received a payday loan in the amount of $1,200 from another illegal online payday lender (Plain Green Loans) by completing an application on its website. The nominal annual interest rate on this loan was at least 279.22%.**

**On or about July 12, 2013, Plain Green Loans initiated a debit transaction from Plaintiff Graham's checking account in Connecticut through the ACH Network. The ODFI originating this transaction on behalf of the illegal online payday lender was Defendant NABC.**

**On or about April 23, 2013, Plaintiff Graham applied for and received a payday loan in the amount of $300 from another illegal online payday lender**

**(National PDL) by completing an application on its website. National PDL charged a 25% fee on any amount borrowed, or $25 for every $100 borrowed approximately every two weeks.**

**On or about July 12, 2013, National PDL initiated a debit transaction from Plaintiff Graham's checking account in Connecticut through the ACH Network. The ODFI originating this transaction on behalf of the illegal online payday lender was BMO.**

**On or about May 6, 2011, Plaintiff Russo applied for and received a payday loan in the amount of $400 from another illegal online payday lender (American Web Loan) by completing an application on its website. The nominal annual interest rate on this loan was at least 600%.**

**From May 27, 2011 through December 27, 2011, American Web Loan intiated frequent debit transactions from Plaintiff Russo's checking account in Connecticut through the ACH Network. The ODFI originating each of these transactions on behalf of the illegal online payday lender was MBT.**

**On or about January 26, 2011, Plaintiff Russo applied for and received a payday loan in the amount of $350 from another illegal online payday lender (Cash Cure) by completing an application on its website. The nominal annual interest rate on this loan was at least 400%.**

**From February 14, 2011 through August 15, 2011, Cash Cure initiated frequent debit transactions from Plaintiff Russo's checking account in Connecticut through the ACH Network. The ODFI originating each of these transactions on behalf of the illegal online payday lender was First Premier.**

**On or about February 15, 2011, Plaintiff Russo applied for and received a payday loan in the amount of $200 from another illegal online payday lender (One Click Cash) by completing an application on its website. The nominal annual interest rate on this loan was at least 400%.**

**From March 4, 2011 through June 10, 2011, One Click Cash initiated frequent debit transactions from Plaintiff Russo's checking account in Connecticut through the ACH Network. The ODFI originating each of these transactions on behalf of the illegal online payday lender was First International.**

c. If the RICO claim is based on the predicate offenses of wire fraud, mail fraud, or fraud in the sale of securities, the "circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). Identify the time, place and contents of the alleged misrepresentations, and the identity of persons to whom and by whom the alleged misrepresentations were made;

**RESPONSE: Not applicable.**

d. State whether there has been a criminal conviction for violation of the predicate acts;

**RESPONSE: Not to Plaintiffs' knowledge.**

e. State whether civil litigation has resulted in a judgment in regard to the predicate acts;

**RESPONSE: Not to Plaintiffs' knowledge.**

f. Describe how the predicate acts form a "pattern of racketeering activity"; and

**RESPONSE: Not applicable. A RICO claim based on the collection of unlawful debt requires only a single act of collection as a predicate for RICO liability.** *See, e.g., United States v. Weiner*, **3 F.3d 17, 24 (1st Cir. 1993) (holding that "a single collection of an unlawful debt satisfies section 1962(c)'s 'collection of unlawful debt' requirement");** *United States v. Giovanelli*, **945 F.2d 479, 490 (2d Cir. 1991) ("Unlike a 'pattern of racketeering activity' which requires proof of two or more predicate acts, to satisfy RICO's 'collection of unlawful debt' definition the government need only demonstrate a single collection.").**

g. State whether the alleged predicate acts relate to each other as part of a common plan. If so, describe in detail.

**RESPONSE: Defendants' predicate acts of collecting unlawful debts were interrelated and part of a common plan to collect origination fees by originating debits on behalf of the illegal online payday lenders.**

**In order to initiate debit entries from consumer checking accounts on the ACH Network, illegal online payday lenders, or third-party companies acting on their behalf, must enter into origination agreements with one or more ODFIs and compensate the ODFI(s) for its services.**

**Defendants entered into origination agreements with multiple illegal online payday lenders, or third-party companies acting on their behalf, to originate debits on behalf of entities that Defendants knew were acting in violation of state law and to facilitate payday loans to consumers residing in the banned states and collect interest at usurious rates, in violation of state law. Each time Defendants originated a debit entry on behalf of an illegal online payday lender, Defendants, directly or indirectly, conducted and participated in the conduct of the affairs of the ACH Network through the collection of an unlawful debt.**

6. Describe in detail the alleged enterprise for each RICO claim. A description of the enterprise shall include the following information:

   a. State the names of the individuals, partnerships, corporations, associations, or other legal entities which allegedly constitute the enterprise;

   b. Describe the structure, purpose, function and course of conduct of the enterprise;

   **RESPONSE to 6(a)-(b):** **The ACH Network is a processing system in which financial institutions accumulate ACH transactions throughout the day for later batch processing. Instead of using paper to carry necessary transaction information, such as with checks, ACH Network transactions are transmitted electronically, allowing for faster processing times and cost savings. The ACH Network is comprised of the following participants:**

   i. **"Originators," which include individuals, corporations, or other entities that initiate entries into the ACH Network, including illegal online payday lenders;**

   ii. **"ODFIs," which include all participating financial institutions that originate ACH entries at the request of an Originator or Third Party Service Provider and agree to abide by the NACHA Operating Rules, including BMO, First International, First Premier, NBC, MBT, and NABC;**

   iii. **"RDFIs," which include all participating financial institutions that are qualified to receive ACH entries and agree to abide by the NACHA Operating Rules;**

   iv. **"Receivers," which include individuals, corporations or other entities that have authorized an Originator to initiate a credit or debit entry to a transaction account held at an RDFI;**

   v. **"ACH Operators," which include two central clearing facilities, the Federal Reserve Banks, and Electronic Payments Network (EPN), that process ACH transactions between financial institutions; and**

   vi. **"Third-Party Service Providers," which include entities other than the Originator, ODFI, or RDFI that perform any function on behalf of the Originator, ODFI, or RDFI with respect to the processing of ACH entries. A "Third-Party Sender" is a type of Third-Party Service Provider that has an ACH agreement with the Originator, and the ODFI's ACH agreement is with the Third-Party Sender and not the Originator.**

11

> **The ACH Network constitutes an "enterprise" pursuant to 18 U.S.C. § 1961(4) as an association of multiple legal entities operating under NACHA (NACHA is an association that manages the development, administration, and governance of the ACH Network).**
>
> **Alternatively, participants in the ACH Network constitute an "association-in-fact" enterprise as those terms are used in 18 U.S.C. § 1961(4) (the "ACH Enterprise") in that: (a) participants in the ACH Enterprise share a common purpose of facilitating large volume batch processing of electronic payments (credit and debit transactions) for and between participating depository financial institutions; (b) to achieve this common purpose, participants in the ACH Enterprise preserve close business relationships and maintain established and defined roles within the enterprise; and (c) the ACH Enterprise has been in existence for many years, is still ongoing, and has longevity sufficient to permit the participants to achieve their common purpose.**

c. State whether any defendants are employees, officers or directors of the alleged enterprise;

d. State whether any defendants are associated with the alleged enterprise;

e. State whether you are alleging that the defendants are individuals or entities separate from the alleged enterprise, or that the defendants are the enterprise itself, or members of the enterprise; and

f. If any defendants are alleged to be the enterprise itself, or members of the enterprise, explain whether such defendants are perpetrators, passive instruments, or victims of the alleged racketeering activity.

> **RESPONSE to 6(c)-(f):** The ACH Enterprise does not have employees, officers or directors. BMO, First International, First Premier, NBC, MBT, and NABC are members of the ACH Enterprise and associated with the ACH Enterprise through their role as ODFIs within the ACH Enterprise. Accordingly, BMO, First International, First Premier, NBC, MBT, and NABC are entities separate from the ACH Enterprise itself.
>
> **BMO, First International, First Premier, NBC, MBT, and NABC, as ODFIs, play a distinct role in the operation, management, and control of the ACH Enterprise. Under the NACHA Rules, BMO, First International, First Premier, NBC, MBT, and NABC serve the critical function of "gatekeeper of the ACH Network" and are responsible for all entries it originates on the ACH Network whether initiated by an Originator, or by a Third-Party Service Provider acting on the Originator's behalf.**

7. State and describe in detail whether you are alleging that the pattern of racketeering activity and the enterprise are separate or have merged into one entity.

   **RESPONSE: Not applicable for the reasons set forth in Response to 5(f). However, Defendants' collection of unlawful debt through the ACH Enterprise is separate from the ACH Enterprise itself, which processes billions of dollars in lawful banking transactions.**

8. Describe the alleged relationship between the activities of the enterprise and the pattern of racketeering activity. Discuss how the racketeering activity differs from the usual and daily activities of the enterprise, if at all.

   **RESPONSE: The ACH Enterprise was formed to facilitate and process large volumes of lawful and legitimate credit and debit transactions, in batches, between financial institutions. BMO, First International, First Premier, NBC, MBT, and NABC, as ODFIs, are required to implement appropriate controls so as not to facilitate an Originator's unlawful activity by originating transactions that could be in violation of state and/or federal law. By originating debit entries on behalf of illegal online payday lenders, BMO, First International, First Premier, NBC, MBT, and NABC used the ACH Network to directly or indirectly collect unlawful debts rather than further the ACH Enterprise's usual and legal activities consisting of facilitating and processing lawful and legitimate large batch credit and debit transactions.**

9. Describe what benefits, if any, the alleged enterprise receives from the alleged pattern of racketeering.

   **RESPONSE: The ACH Enterprise serves a legitimate purpose to facilitate and process large volumes of lawful and legitimate credit and debit transactions. Some participants in the ACH Enterprise, including Defendants, derive a fee from initiating transactions through the ACH Enterprise. However, the ACH Enterprise does not benefit from the collection of unlawful debts and, in fact, its governing body has set up controls to prevent the initiation of abusive financial transactions including those initiated by online payday lenders.**

10. Describe the effect of the activities of the enterprise on interstate or foreign commerce.

    **RESPONSE: The ACH Enterprise facilitates and processes large volume batch processing of electronic payments, credit and debit transactions, for and between participating depository financial institutions across the United States. This affects commerce nationally and internationally.**

11. If the complaint alleges a violation of 18 U.S.C. Section 1962 (a), provide the following information:

a. State who received the income derived from the pattern of racketeering activity or through the collection of an unlawful debt; and

b. Describe the use or investment of such income.

**RESPONSE to 11(a)-(b): Not applicable.**

12. If the complaint alleges a violation of 18 U.S.C. Section 1962 (b), describe in detail the acquisition of maintenance of any interest in or control of the alleged enterprise.

**RESPONSE: Not applicable.**

13. If the complaint alleges a violation of 18 U.S.C. Section 1962 (c), provide the following information:

a. State who is employed by or associated with the enterprise; and

**RESPONSE:** *See* **Response to 6(a)-(b) above.**

b. State whether the same entity is both the liable "person" and the "enterprise" under Section 1962 (c).

**RESPONSE: No. Defendants are separate from the ACH Enterprise itself and none of Defendants are alleged to be a RICO "enterprise" under 18 U.S.C. § 1962(c).**

14. If the complaint alleges a violation of 18 U.S.C. Section 1962 (d), describe in detail the alleged conspiracy.

**RESPONSE: BMO, First International, First Premier, NBC, MBT, and NABC entered into origination agreements with illegal online payday lenders or Third-Party Senders operating on their behalf. Illegal online payday lenders, as Originators, and Defendants, as ODFIs, reached an agreement and otherwise conspired to use their respective roles within the ACH Enterprise to facilitate payday loans to consumers residing in states that banned the practice and to collect usurious interest rates, in violation of state law. In furtherance of their conspiracy, the illegal online payday lenders agreed to initiate transactions whereby borrowers' bank accounts were debited and the unlawful debts collected in violation of 18 U.S.C. § 1962(c), and BMO, First International, First Premier, NBC, MBT, and NABC agreed to originate ACH entries by which the accounts were debited and the unlawful debts collected in violation of 18 U.S.C. §1962(c). BMO, First International, First Premier, NBC, MBT, and NABC knew that the illegal online payday lenders were payday lenders and that payday loans were illegal and unenforceable in the banned states. Therefore, Defendants intentionally conspired and agreed to directly and indirectly conduct and participate in the conduct of the affairs of the ACH Enterprise through the collection of unlawful debts.**

15. Describe the alleged injury to business or property.

    **RESPONSE: Plaintiffs and members of the proposed class and Connecticut sub-class were injured in their property by the debiting of their bank accounts by Defendants in order to collect unlawful and unenforceable debts on behalf of the illegal online payday lenders**.

16. Describe the direct causal relationship between the alleged injury and the violation of the RICO statute.

    **RESPONSE: There is a direct causal relationship between Plaintiffs' alleged injury and Defendants' violation of RICO. But for Defendants' agreements with online payday lenders (or Third-Party Senders operating on their behalf) to originate ACH debits from the checking accounts of consumers located in the banned states, the illegal online payday lenders would not have been able to collect interest payments that are unenforceable under state usury laws and which interest rates are at least twice the enforceable rate.**

17. List the damages sustained for which each defendant is allegedly liable.

    **RESPONSE: Defendants are liable to Plaintiffs and members of the proposed class and Connecticut sub-class for damages suffered as a result of Defendants' violations of 18 U.S.C. § 1962(c). Damages include a refund of every ACH debit from the accounts of class members in which Defendants were the ODFIs and which represented any payment of any kind to illegal online payday lenders, trebled, along with attorneys' fees and costs pursuant to 18 U.S.C. § 1964(c).**

18. List all other federal causes of action, if any, and provide the relevant statute numbers.

    **RESPONSE: Not applicable.**

19. List all pendent state claims, if any.

    **RESPONSE: The pendent state claims alleged in the Complaint include the following:**

    - **Thirteenth Claim for Relief for Assumpsit on behalf of Plaintiffs and the Connecticut sub-class;**

    - **Fourteenth Claim for Relief for Aiding and Abetting Violations of Connecticut Usury Statute (Conn. Gen. St. § 37-4) on behalf of Plaintiffs and the Connecticut sub-class;**

15

- **Fifteenth Claim for Relief for Aiding and Abetting Violations of the Connecticut Small Loan Law (Conn. Gen. St. §36a-563) on behalf of Plaintiffs and the Connecticut sub-class;**

- **Sixteenth Claim for Violations of Connecticut's Unfair Trade Practices Act (Conn. Gen. St. 42-110a, *et seq.*) on behalf of Plaintiffs and the Connecticut sub-class; and**

- **Seventeenth Claim for Relief for permanent injunctive relief on behalf of Plaintiffs, the class and the Connecticut sub-class.**

20. Provide any additional information that you feel would be helpful to the Court in processing your RICO claim.

    **RESPONSE: The ACH Network provides for the interbank clearing of electronic payments for approximately 98% of the depository financial institutions. There are hundreds of federally and state-chartered banks operating in the United States, yet Defendants are six of fewer than 12 banks in the United States that consistently originate debits on the ACH Network on behalf of illegal payday lenders. Defendants' deliberate and knowing decision to act as a "collector" for illegal payday lenders violates federal law under 18 U.S.C. § 1961(6). It violates the law of 13 states (including the State of Connecticut) and the District of Columbia that have banned payday lending. It violates FDIC guidance issued in February 2005, June 2008 and January 2012. It violates OCC guidance issued in February 2006 and April 2008. It violates NACHA Operating Rules and Guidelines and advisories.**

    **Defendants' illegitimate use of the ACH Network – a network designed to facilitate and streamline legitimate banking transactions – to engage in unlawful debt collection is precisely the type of racketeering conduct that RICO was intended to combat.**

Respectfully submitted,

PLAINTIFFS, CHRISTOPHER GRAHAM
AND ELLEN RUSSO

/s/ Karen M. Leser-Grenon
James E. Miller (ct21560)
jmiller@sfmslaw.com
Karen M. Leser-Grenon (ct23587)
kleser@sfmslaw.com
Shepherd, Finkelman, Miller & Shah, LLP
65 Main Street
Chester, CT 06412
Telephone: (860) 526-1100
Facsimile: (860) 526-1120

CHITWOOD HARLEY HARNES LLP
Darren T. Kaplan, admitted *pro hac vice*
dkaplan@chitwoodlaw.com
1350 Broadway, Suite 908
New York, NY 10018
Telephone: (917) 595-3600
Facsimile: (404) 876-4476

STUEVE SIEGEL HANSON LLP
Norman E. Siegel
siegel@stuevesiegel.com
Steve Six
six@stuevesiegel.com
J. Austin Moore
moore@stuevesiegel.com
460 Nichols Road, Suite 200
Kansas City, MO 64112
Telephone: (816) 714-7100
Facsimile: (816) 714-7101

KOPELOWITZ OSTROW P.A.
Jeffrey M. Ostro, admitted *pro hac vice*
ostrow@KOlawyers.com
Jason H. Alperstein
Alperstein@KOlawyers.com
200 S.W. 1st Avenue, 12th Floor
Fort Lauderdale, FL 33301
Telephone: (954) 525-4100
Facsimile: (954) 525-4300

TYCKO & ZAVAREEI LLP
Hassan A. Zavareei, admitted *pro hac vice*
hzavareei@tzlegal.com
Jeffrey D. Kaliel, admitted *pro hac vice*
jkaliel@tzlegal.com
Anna C. Haac
ahaac@tzlegal.com
200 L Street, N.W., Suite 808
Washington, DC 20036
Telephone: (202) 973-0900
Facsimile: (202) 973-0950

SHEPHERD, FINKELMAN, MILLER & SHAH, LLP
James C. Shah, admitted *pro hac vice*
jshah@sfmslaw.com
35 East State Street
Media, PA 19063
Telephone: (610) 891-9880
Facsimile: (610) 891-9883


Their Counsel

**CERTIFICATE OF SERVICE**

I hereby certify that on October 24, 2013, a copy of the foregoing RICO Case Statement Pursuant to Standing Order in Civil RICO Cases was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

                                                  /s/Karen M. Leser-Grenon
                                                  Karen M. Leser-Grenon (ct23587)
                                                  Shepherd Finkelman Miller & Shah, LLP
                                                  65 Main Street
                                                  Chester, CT 06412
                                                  Telephone: (860) 526-1100
                                                  Facsimile: (860) 526-1120
                                                  Email: kleser@sfmslaw.com