## UNITED STATES DISTRICT COURT

## DISTRICT OF CONNECTICUT

| | |
|---|---|
| CHRISTOPHER GRAHAM, and ELLEN RUSSO, on Behalf of Themselves and All Others Similarly Situated,<br><br>        Plaintiffs,<br><br>    v.<br><br>BMO HARRIS BANK, N.A., NATIONAL BANK OF CALIFORNIA, N.A., FIRST INTERNATIONAL BANK & TRUST, a North Dakota State-Chartered Bank, FIRST PREMIER BANK, a South Dakota State-Chartered Bank, MISSOURI BANK AND TRUST, a Missouri-Chartered Bank, and NORTH AMERICAN BANKING COMPANY, a Minnesota State- Chartered Bank,<br><br>        Defendants. | Case No. 3:13-cv-01460 (WWE)<br><br><br><br><br><br><br><br>January 9, 2014 |

## DEFENDANT FIRST INTERNATIONAL BANK & TRUST'S REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................. 1

I.   ARGUMENT............................................................................................................. 1

    A.   The Arbitration Agreement Requires the Arbitrator to Decide Plaintiff's Challenges Regarding the Validity and Scope of the Arbitration Agreement. ....................................................................................................... 1

    B.   In Any Event, It Is Black-Letter Law that the Plaintiff Cannot Avoid Arbitration by Claiming Her Loan Agreement Was Invalid. ............................... 2

    C.   Plaintiff Cannot Escape Arbitration by Suing First International Instead of Her Lender Either. .......................................................................................... 3

        1.   The Plain Language of the Arbitration Agreement Demonstrates Intent to Benefit First International. .......................................................... 3

        2.   Plaintiff's Complaint Is Based on Acts that First International Allegedly Undertook as an Agent "on Behalf of" OneClickCash............. 5

        3.   Plaintiff Is Equitably Estopped from Evading Her Agreement to Arbitrate Disputes About the Validity of Her Loan. ................................ 7

            a.   Plaintiff's Claims Are Intertwined Because They Dispute the Validity of Her Loan.............................................................. 8

            b.   The Loan Agreement Containing the Arbitration Provision Specifically Provides for First International's Role in Processing ACH Transactions. ....................................................... 9

            c.   The Unclean Hands Doctrine Does Not Apply Here Because There Is No Allegation or Evidence of Unclean Hands as to the Arbitration Agreement Itself. ................................ 9

II.  CONCLUSION .......................................................................................................... 10

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Beckenstein v. Potter & Carrier, Inc.*,
464 A.2d 6 (Conn. 1983) ....... 5

*Buckeye Check Cashing, Inc. v. Cardegna*,
546 U.S. 440 (2006) ....... 2, 3

*Campaniello Imports, Ltd. v. Saporiti Italia, S.p.A.*,
117 F.3d 655 (2d Cir. 1997) ....... 6, 7

*Church v. Gruntal & Co.*,
698 F. Supp. 465 (S.D.N.Y. 1988) ....... 4

*Contec Corp. v. Remote Solution Co.*,
398 F.3d 205 (2d Cir. 2005) ....... 2

*Conway v. Icahn & Co.*,
16 F.3d 504 (2d Cir. 1994) ....... 6

*Denney v. BDO Seidman, LLP*,
412 F.3d 58 (2d Cir. 2005) ....... 2, 3

*Denney v. Jenkens & Gilchrist*,
412 F. Supp. 2d 293 (S.D.N.Y. 2005) ....... 8, 9

*Grigerik v. Sharpe*,
721 A.2d 526 (Conn. 1998) ....... 3

*In re A2p SMS Antitrust Litig.*,
No. 12 CV 2656, 2013 U.S. Dist. LEXIS 132303 (S.D.N.Y. Sept. 16, 2013) ....... 9

*In re ACM-Tex., Inc.*,
430 B.R. 371 (Bankr. W.D. Tex. 2010) ....... 7

*JLM Indus., Inc. v. Stolt-Nielsen SA*,
387 F.3d 163 (2d Cir. 2004) ....... 8

*McPheeters v. McGinn, Smith & Co.*,
953 F.2d 771 (2d Cir. 1992) ....... 4

*Merrill Lynch Inv. Managers v. Optibase, Ltd.*,
337 F.3d 125 (2d Cir. 2003) ....... 7

*Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*,
    322 F.3d 147 (2d Cir. 2003) ................................................................................7

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*,
    388 U.S. 395 (1967) ......................................................................................10

*Sokol Holdings, Inc. v. BMB Munai, Inc.*,
    542 F.3d 354 (2d Cir. 2008) ..............................................................................9

*Watson v. Murphy*,
    No. 3:08-cv-568 (WWE), 2009 U.S. Dist. LEXIS 90850 (D. Conn. Sept. 30, 2009)...............6

## OTHER AUTHORITIES

Santee Sioux Nation Arbitration Ordinance Section 204(d), *available at*
    http://mobile.oneclickcash.com/imgdir/media/Santee_Sioux_Nation_Arbitration_
    Ordinance.pdf ................................................................................................8

## PRELIMINARY STATEMENT

Plaintiff does not dispute that she agreed to arbitrate any claims she had against her lender's "servicers." She also does not contest that First International is a "servicer" that provides ACH services to her lender, OneClickCash. Nonetheless, Plaintiff insists that she could not have anticipated that the arbitration agreement would cover this suit, because she "did not know First International from Adam." (Opp. at 29, ECF No. 136.) Her claimed ignorance of First International's potential role is belied by the very terms of the loan agreement. Though that agreement does not mention First International by name, it expressly contemplates that the lender may use a third-party servicer to carry out ACH transactions. It authorizes the lender or its "representatives" or "agents" to use the ACH network to debit loan payments from Plaintiff. (ECF No. 66-1 at 25, 29.) This authorization was set out in both the loan agreement and a separate agreement, incorporated by reference and specifically assented to by Plaintiff, entitled "ACH AUTHORIZATION AGREEMENT." (ECF No. 66-1 at 14.) Plaintiff cannot escape arbitration of her dispute with First International.

Plaintiff's inflammatory assertions that OneClickCash is a "notorious" "loan shark" only highlights that her suit targets First International in its capacity as a servicer and alleged agent for OneClickCash. (Opp. at 1, 2.) Moreover, Plaintiff's claim that Connecticut law "indisputably" invalidates her loan agreement is wrong. (Opp. at 5.) Whether Connecticut law rather than tribal law applies to her loan is a contested issue. And it is an issue that the parties agreed to arbitrate.

I.  **ARGUMENT**

    A.  **The Arbitration Agreement Requires the Arbitrator to Decide Plaintiff's Challenges Regarding the Validity and Scope of the Arbitration Agreement.**

Plaintiff does not dispute that she signed an arbitration agreement that clearly and unmistakably requires arbitration of all claims regarding "the validity and scope of this Arbitration Provision . . . , including, but not limited to any claim that all or any part of . . . this Arbitration Provision is void, voidable, invalid or enforceable." (ECF No. 66-1 at 27.)

1

Plaintiff's assertions that her arbitration agreement is unenforceable or that its scope does not cover her dispute with First International are to be decided by the arbitrator, not the courts.

Plaintiff's sole response is to cite *Contec Corp. v. Remote Solution Co.*, 398 F.3d 205 (2d Cir. 2005), for the proposition that such language is "not dispositive when a non-signatory attempts to compel arbitration." (Opp. at 6 n.3.) But *Contec* directly supports First International's position by holding that whether a non-signatory could compel arbitration was for the *arbitrator* to decide, not the courts. *Id.* at 211. There, the Second Circuit relied on the fact that the plaintiff was a signatory to the arbitration agreement, and that the issues were "intertwined" with the underlying agreement. *Id.* at 209. The same is true here. (MTC at 15-16; *see also* Part I.E.1 *infra*.) The FAA requires enforcement of the parties' clear and unmistakable intent to delegate the determination of arbitrability to the arbitrator.

## B.    In Any Event, It Is Black-Letter Law that the Plaintiff Cannot Avoid Arbitration by Claiming Her Loan Agreement Was Invalid.

Even if this Court were to address Plaintiff's challenge to the validity of her agreement to arbitrate, Plaintiff cannot avoid that agreement by arguing that the underlying loan contract is "illegal on its face." (Opp. at 5.) That is not the legal standard. Instead, to avoid her agreement to arbitrate, Plaintiff bears the burden to show that the arbitration agreement *itself* is invalid. In *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 449 (2006), the Supreme Court held that "unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance." 546 U.S. at 445-46; *see also Denney v. BDO Seidman, LLP*, 412 F.3d 58, 67 (2d Cir. 2005) (explaining "'a party merely alleg[ing] that a contract is voidable,' who does not further allege that the arbitration clause itself is voidable, will be compelled to arbitrate the dispute") (citations omitted).

As in *Buckeye*, Plaintiff has challenged the underlying contract as usurious and illegal, not the validity of its arbitration provision. 546 U.S. at 446. Plaintiff's hyperbolic analogy to a "loan shark" who "forced his desperate victim to sign an arbitration agreement" (Opp. at 3) is no substitute. She does not allege that her agreement to arbitrate was coerced or otherwise invalid.

2

Instead, without any supporting authority, Plaintiff claims that there is an exception to *Buckeye* where a non-signatory seeks to compel arbitration.  That is flatly wrong.  Courts have enforced arbitration agreements on behalf of non-signatories where a plaintiff has challenged the validity of the underlying contract.  (MTC at 16 (citing *Cardenas v. AmeriCredit Fin. Servs. Inc.*, Nos. C 09–04978 SBA, C 09–04892 SBA, 2011 WL 2884980, at *4 (N.D. Cal. July 19, 2011)).)  Plaintiff makes no effort to distinguish that case law.  Nor could she.  The rationale for the *Buckeye* rule is that, under the FAA, the question of whether the arbitration clause is valid is severable from the validity of the contract as a whole.  *See* 546 U.S. at 445.  That rationale applies equally to non-signatory arbitration.  Indeed, the Second Circuit in *Denney* applied the standard *Buckeye* analysis where non-signatory defendants sought to compel arbitration and plaintiff challenged the underlying contract as invalid.  412 F.3d at 70.

### C.   Plaintiff Cannot Escape Arbitration by Suing First International Instead of Her Lender Either.

#### 1.   The Plain Language of the Arbitration Agreement Demonstrates Intent to Benefit First International.

Even if the Court were to rule on the issue rather than the arbitrator, Plaintiff cannot avoid arbitration by suing First International rather than her lender.  Plaintiff agreed to arbitrate "all claims asserted by You individually against . . . any of our . . . servicers" (ECF No. 66-1 at 19-20, 27-28), and Plaintiff is suing First International in its capacity as a servicer that provided ACH services to her lender OneClickCash.

Plaintiff argues that the arbitration agreement, though it encompassed claims against servicers, was not intended to *benefit* servicers.  (Opp. at 10-11.)  The arbitration agreement specifically provides: "This Arbitration Provision is binding upon and ***benefits*** Us, our successors and assigns, and related third parties."  (ECF No. 66-1 at 27 (emphasis added).)  "[R]elated third parties" is defined to include "servicers."  (*Id.*)  It is difficult to imagine language more clearly expressing an intent to permit non-signatory servicers to benefit from the arbitration agreement.  That plain language demonstrates the intent of both Plaintiff and

3

OneClickCash. *See Grigerik v. Sharpe*, 721 A.2d 526, 536 (Conn. 1998) (intent of the parties is to be "'determined from the terms of the contract'").

Plaintiff offers no response to this language, which was cited in the opening brief. (MTC at 12.) Instead, she cites a series of cases that declined to compel arbitration because the arbitration agreement failed to state any such intent to benefit the non-signatory. (Opp. at 10-11 (citing *Brantley v. Republic Mortg. Ins. Co.*, 424 F.3d 392, 397 (4th Cir. 2005) (contract did not mention mortgage insurance transaction at all, let alone make reference to the mortgage insurer); *Church v. Gruntal & Co.*, 698 F. Supp. 465, 467 (S.D.N.Y. 1988) ("Had plaintiff and [broker] intended the arbitration clauses to benefit [non-signatories], this intent could have been expressed in the clauses. It was not."); *McPheeters v. McGinn, Smith & Co.*, 953 F.2d 771, 772 (2d Cir. 1992) (non-signatory was left "entirely out of the picture" and third-party claims were not mentioned in the arbitration clause)).) Those cases are wholly inapposite here, as the arbitration provision expressly states an intent to benefit non-signatory servicers. There is no need for the Court to resort to "'construction or implication'" of the terms. (Opp. at 12.)

The structure of the loan agreement further confirms the parties' intent to benefit non-signatory servicers such as First International. Contrary to Plaintiff's assertion that ODFIs are not "identified even implicitly within the Loan Agreement" (Opp. at 11), the agreement specifically authorizes OneClickCash or its "authorized representatives" or "agents" to "initiate ACH debit entries" for loan payments from Plaintiff's bank account. (ECF No. 66-1 at 25, 29.) That provision even incorporates by reference a separately titled "Authorization to Initiate ACH Credit and Debit Entries." (*Id.* at 29.) To complete the loan process, Plaintiff was required to confirm that she has read and accepted not only the terms of the arbitration provisions contained in both the loan application and agreement, but also the "ACH [Automated Clearing House] AUTHORIZATION AGREEMENT." (*Id.* at 14.)

That First International is not specifically identified by name does not defeat its status as a third-party beneficiary. (Opp. at 10-11.) An agreement to arbitrate does not have to name every service provider in order to cover them: it need only "anticipate[] . . . their role." (MTC

at 18 (quoting *In re A2p SMS Antitrust Litig.*, No. 12 CV 2656, 2013 U.S. Dist. LEXIS 132303, at *29 (S.D.N.Y. Sept. 16, 2013)).) Here, the agreement specifically states the parties' intent that the arbitration provisions benefit "servicers" like First International and authorizes the use of "authorized representatives" and "agents" to "initiate ACH debits." (ECF No. 66-1 at 25, 27, 29.)

### 2.   Plaintiff's Complaint Is Based on Acts that First International Allegedly Undertook as an Agent "on Behalf of" OneClickCash.

Plaintiff's attempt to evade arbitration also fails for a second and independent reason: even if the contract were silent about its application to servicers, First International may compel arbitration because it has been sued in its capacity as an agent of OneClickCash.

Plaintiff does not dispute that her suit is based on the allegation that First International carried out ACH debits "on behalf of" and "at the request of" her lender. (MTC at 7 ("Plaintiff contends that First International did this by "working *on behalf of* [OneClickCash] to 'originate' ACH entries that represent payday loan credits and debits to and from consumer checking accounts." (Compl. ¶ 8 (emphasis added); *see also id.* ¶ 9 (alleging that Defendants "know they are acting *on behalf of* Out-Of-State Payday Lenders and that the entries they originate on the ACH Network *on behalf of* Out-Of-State Payday Lenders will credit or debit funds in states in which the Out-of-State Payday Lenders' loans are illegal and unenforceable") (emphasis added).)"); *see also* Compl. ¶¶ 48, 75, 140b, 145, 147c, 152c.)

Furthermore, though she now attempts to minimize those allegations, Plaintiff alleges that each of those debits was undertaken at the direction of the lender and on terms that the lender controlled.  She alleges that the lender would submit an ACH debit request to its bank (here, First International); its bank would then submit the transaction to be processed through the ACH network, ultimately resulting in the funds being debited from the customer's account. (Compl. ¶¶ 38-43.)  She alleges that First International and her lender undertook these tasks with a "common purpose" as part of a "close business relationship[]."  (Compl. ¶ 141.)  As such, Plaintiff has alleged an agency relationship between First International and OneClickCash.

*Beckenstein v. Potter & Carrier, Inc.*, 464 A.2d 6, 14 (Conn. 1983) ("'[A]n essential ingredient of agency is that the agent is doing something at the behest and for the benefit of the principal.'") (internal citation omitted).

Nonetheless, Plaintiff contends that "NACHA Rules prevented First International from being an agent of OneClickCash" because its "duties" under NACHA "eliminate any possibility that OneClickCash 'controls' the activities of First International." (Opp. at 14, 17.) That First International may have other obligations does not negate its agency. Agents can have legal or contractual obligations that limit the actions taken on behalf of a client. This is a basic notion, easily illustrated: an attorney has independent duties as an officer of the court and member of the bar, but is still an agent of his or her client. *See, e.g., Watson v. Murphy*, No. 3:08-cv-568 (WWE), 2009 U.S. Dist. LEXIS 90850, at *10 (D. Conn. Sept. 30, 2009) (explaining "the attorney is the petitioner's agent' in litigating the case"). Similarly, a stockbroker is an agent when executing trades on behalf of clients, even though the broker must comply with the rules of the National Association of Securities Dealers in carrying out those trades. *See Conway v. Icahn & Co.*, 16 F.3d 504, 510 (2d Cir. 1994) (explaining relationship between stockbroker and customer is that of a principal and agent) (citing Restatement (Second) of Agency § 381 (1958)).

Moreover, Plaintiff's lawsuit is founded on the notion that First International purportedly *violated* its alleged duties under the NACHA Rules by "blindly following [OneClickCash's] payment processing requests." (Opp. at 12; *see also* Compl. ¶ 146 (alleging that First International "originated debit entries . . . in violation of . . . the NACHA Operating Rules").) In other words, First International has been sued for allegedly acting at the direction of OneClickCash rather than ignoring OneClickCash's instructions in favor of other obligations (i.e., acting as an alleged agent of OneClickCash).

Plaintiff responds that "the Complaint never once describes First International as an 'agent' of OneClickCash.'" (Opp. at 16.) Plaintiff offers no case law to support her formalistic argument that she must have used the word "agent." *Compare Campaniello Imports, Ltd. v. Saporiti Italia, S.p.A.*, 117 F.3d 655, 668-69 (2d Cir. 1997) (concluding arbitration agreement

6

covered non-signatory as plaintiffs had "not alleged that they had dealt with [the non-signatory] outside of his capacity as an agent"). Alternatively, Plaintiff cites out-of-circuit case law for the proposition that allegations of conspiracy, standing alone, are not sufficient to establish agency.[1] That case law is irrelevant here because Plaintiff specifically asserts that the bank acted at the behest of her lender.

Plaintiff does not need "the benefit of discovery" to determine whether OneClickCash "manifested its intent for First International to act for it" as an agent. (Opp. at 14.) Plaintiff's allegations of agency in her complaint serve as binding judicial admissions. *See, e.g., Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 167 (2d Cir. 2003) ("[T]he allegations in the Second Amended Complaint are 'judicial admissions' by which Color Tile Committee was 'bound throughout the course of the proceeding.'") (citation omitted).[2]

### 3. Plaintiff Is Equitably Estopped from Evading Her Agreement to Arbitrate Disputes About the Validity of Her Loan.

There is also a third and independent reason why Plaintiff cannot avoid her agreement to arbitrate her claims here: the doctrine of equitable estoppel. Each of Plaintiff's claims against First International is intertwined with the loan agreement because each claim relies on the allegation that her loan agreement was invalid under Connecticut usury law. Moreover, in asserting that she could not have anticipated the need to arbitrate these claims because she "does not know First International from Adam" (Opp. at 29), Plaintiff ignores that the arbitration

---

[1] Opp. at 15-16 (citing *Feeley v. Total Realty Mgmt.*, 660 F. Supp. 2d 700, 711 (E.D. Va. 2009) (granting motion to dismiss according to the "'doctrine of intracorporate immunity'" because it was not clear that plaintiffs pleaded agent or co-conspirator relationships in the alternative); *In re ACM-Tex., Inc.*, 430 B.R. 371, 422, 427 (Bankr. W.D. Tex. 2010) ("[M]eeting of the minds is an essential element of civil conspiracy under Texas law."); *Merrill Lynch Inv. Managers v. Optibase, Ltd.*, 337 F.3d 125, 130 (2d Cir. 2003) (decision involving enforcement of an arbitration agreement *against* a non-signatory).

[2] Additionally, as will be further detailed in First International's opposition to Plaintiff's Motion to Strike Declaration of Natalie C. Dempsey (ECF No. 137), Plaintiff has failed to demonstrate why discovery is needed to oppose the motion to compel arbitration.

agreement covers "servicers" and that the loan agreement containing the arbitration provision specifically authorizes ACH debits by OneClickCash's authorized representatives and agents.[3]

      a.      **Plaintiff's Claims Are Intertwined Because They Dispute the Validity of Her Loan.**

Plaintiff contends that her claims are not intertwined with the agreement because she is not claiming that First International violated the *terms* of her agreement with her lender.  (Opp. at 19.)  That is not the only situation in which equitable estoppel can apply.  Courts, including the Second Circuit, have repeatedly held that equitable estoppel is available where a plaintiff asserts that the underlying agreement containing the arbitration clause is invalid.  (MTC at 16 (citing *Denney*, 412 F.3d at 67; *Cardenas*, 2011 WL 2884980, at \*4); *see also JLM Indus., Inc. v. Stolt-Nielsen SA*, 387 F.3d 163, 178 (2d Cir. 2004) (applying equitable estoppel because the plaintiff's antitrust claim arose from "entry into the [purportedly illegal contracts] containing allegedly inflated price terms").)  Each claim here relies on the allegation that the loan agreement was invalid under state usury law.  (MTC at 6 (citing Compl. ¶¶ 36, 145, 150, 225, 232, 243, 253).)

None of the cases relied upon by Plaintiff even comes close to the situation here, where every claim is predicated on the allegation that the contract containing the arbitration clause was invalid.[4]  Plaintiffs' reliance on *Denney v. Jenkens & Gilchrist*, 412 F. Supp. 2d 293 (S.D.N.Y.

---

[3]Plaintiff's argument regarding tribal law (Opp. at 30 n.11) does not save her suit either. The arbitration agreement provides that the governing law is the FAA. (ECF No. 66-1 at 27.) In any event, the arbitration law of the Santee Sioux Nation of Nebraska provides for equitable estoppel.  Santee Sioux Nation Arbitration Ordinance Section 204(d), *available at* http://mobile.oneclickcash.com/imgdir/media/Santee_Sioux_Nation_Arbitration_Ordinance.pdf (a third-party nonsignatory may compel arbitration where "the signatory raises any allegation of interdependent or concerted conduct by the nonsignatory").

[4]Opp. at 20-24 (citing *Laumann v. Nat'l Hockey League*, No. 12 Civ. 1817(SAS), 2013 WL 6171671 (S.D.N.Y. Nov. 25, 2013) (where Comcast's antitrust claims had no relation to the contract containing the arbitration provision); *Brantley*, 424 F.3d at 396 (where plaintiffs brought an FCRA claim about mortgage insurance and therefore was "separate and wholly independent" from the mortgage contract); *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1130 (9th Cir. 2013) (where plaintiffs' alleged unfair competition law violations based on misrepresentations and omissions related to vehicle safety, such allegations were not "intimately founded" in the vehicle purchase agreements); *Murphy v. DirecTv, Inc.*, 724 F.3d 1218, 1230 (9th Cir. 2013) (equitable estoppel was inapplicable because the complaint was "replete with allegations of deceit by [non-signatory defendant] that have nothing to do with the Customer Agreement").

2005), is illustrative.  There, the court emphasized that the "[p]laintiffs are not estopped from avoiding arbitration with [the non-signatory defendant] because they do not allege that the [agreements containing the arbitration clause] were integral to the fraudulent scheme."  *Id.* at 300.  By contrast, here, the alleged illegality of the loan agreement is integral to every claim.

> **b.  The Loan Agreement Containing the Arbitration Provision Specifically Provides for First International's Role in Processing ACH Transactions.**

The plain language of the agreement contradicts Plaintiff's assertion that she "did not know First International from Adam" and "could not possibly intuit" the relationship between OneClickCash and First International.  (Opp. at 26, 29.)  The agreement expressly covers "servicers" in the arbitration provision.  The agreement also authorized OneClickCash or its "authorized representatives" or "agents" to "initiate ACH debits," and incorporated by reference a separately titled "Authorization to Initiate ACH Credit and Debit Entries."  (ECF No. 66-1 at 14, 19-20, 25, 27-29.)  *Sokol Holdings, Inc. v. BMB Munai, Inc.*, 542 F.3d 354 (2d Cir. 2008), is not to the contrary.  There, equitable estoppel did not apply because the non-signatory's only relationship to the signatory arose because the non-signatory had allegedly "wrongfully induc[ed] [the signatory] to breach his contract with [plaintiff]."  542 F.3d at 362.  That is a far cry from First International's role as a service provider processing ACH debits, a function expressly contemplated in the agreement containing the arbitration provision.

Plaintiff's insistence that conspiracy allegations alone do not establish equitable estoppel is similarly unhelpful.  (Opp. at 27-29.)  First International relies not only on Plaintiff's conspiracy allegations, but also on her allegations that First International acted as a servicer and processor of ACH debits.  (MTC at 16.)

> **c.  The Unclean Hands Doctrine Does Not Apply Here Because There Is No Allegation or Evidence of Unclean Hands as to the Arbitration Agreement Itself.**

The unclean hands doctrine does not apply.  The doctrine only acts as a bar if the alleged unclean hands relate to the arbitration agreement itself, not to the merits of the underlying contract.  *In re A2p SMS Antitrust Litig.*, 2013 U.S. Dist. LEXIS 132303, at *39 (finding non-

signatory defendants could enforce the arbitration agreement provision under equitable estoppel, and the unclean hands doctrine did not preclude them from compelling arbitration because plaintiffs "still must discuss why Defendants' hands are unclean with regard to the 'making of the agreement to arbitrate.'"); *see also Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 (1967) ("[I]n passing upon a [FAA] § 3 application for a stay while the parties arbitrate, a federal court may consider only issues relating to the making and performance of the agreement to arbitrate," and may not consider challenges to the contract generally.).  Plaintiff only alleges "inequitable conduct" by First International "collecting on illegal debts and then attempting to enforce rights springing from an illegal contract[.]"  (Opp. at 31.)  Plaintiff has offered no such allegations related to her agreement to arbitrate.

## II.    CONCLUSION

For the foregoing reasons, First International respectfully requests that the Court grant its motion to compel arbitration and dismiss, or alternatively, stay the action pending the arbitration.

Dated:  January 9, 2014                    Respectfully submitted,

By:    /s/ James T. Cowdery
       James T. Cowdery (ct05103)
       COWDERY, ECKER & MURPHY, L.L.C.
       280 Trumbull Street, 22nd Floor
       Hartford, Connecticut 06103
       Telephone: (860) 278-5555
       Facsimile: (860) 249-0012
       jcowdery@cemlaw.com

       James McGuire (*pro hac vice*)
       Rita F. Lin (*pro hac vice*)
       Elizabeth Balassone (*pro hac vice*)
       MORRISON & FOERSTER LLP
       425 Market Street
       San Francisco, California 94105-2482
       Telephone: (415) 268-7000
       Facsimile: (415) 268-7522
       rlin@mofo.com

       *Attorneys for Defendant First International
       Bank & Trust*

## CERTIFICATE OF SERVICE

I hereby certify that on January 9, 2014, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

/s/ James T. Cowdery (ct05103)
James T. Cowdery

#3369324

11