# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| CHRISTOPHER GRAHAM, and ELLEN RUSSO, on Behalf of Themselves and All Others Similarly Situated, | : : : : | |
| Plaintiffs, | : : | CASE NO. 3:13-cv-01460 (WWE) |
| v. | : : : | |
| BMO HARRIS BANK, N.A., NATIONAL BANK OF CALIFORNIA, N.A., FIRST INTERNATIONAL BANK & TRUST, a North Dakota State-Chartered Bank, FIRST PREMIER BANK, a South Dakota State-Chartered Bank, MISSOURI BANK AND TRUST, a Missouri-Chartered Bank, and NORTH AMERICAN BANKING COMPANY, a Minnesota State-Chartered Bank, | : : : : : : : : : : : | |
| Defendants. | : | |

## DEFENDANT MISSOURI BANK'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO COMPEL ARBITRATION OF PLAINTIFF CHRISTOPHER GRAHAM'S CLAIMS

**BRYAN CAVE LLP**
1290 Avenue of The Americas
New York, NY   10104-3300
(212) 541-1228
(212) 904-0506 (fax)
*Attorneys for Missouri Bank and Trust*

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ............................................................................. 1

BACKGROUND .............................................................................................. 2

**A.**   Graham Agreed to Arbitrate All Disputes Arising From or Relating to His Loan
Agreements. ..................................................................................... 2

**B.**   Graham Filed This Lawsuit Despite His Agreement to Arbitrate. ..................... 5

ARGUMENT .................................................................................................. 8

**A.**   Graham's Claims Are Subject to Arbitration.............................................. 9

    1.   The Federal Arbitration Act Mandates Arbitration of Graham's Claims. ...............9

    2.   Graham Agreed to Arbitrate Each of His Claims and The Plain Terms of the
Arbitration Provisions Cover Each of His Claims .................................10

**B.**   Missouri Bank Is Entitled To Invoke Graham's Arbitration Agreement. ....................... 11

    1.   Graham Is Equitably Estopped from Litigating His Claims Against Missouri
Bank .......................................................................................12

    2.   Missouri Bank Is a Third Party Beneficiary of the Arbitration Agreement. .........14

**C.**   Plaintiff Waived His Right to Bring a Class Action. ..................................... 15

CONCLUSION ............................................................................................... 16

i

# **TABLE OF AUTHORITIES**

**Cases**

*Am. Express Co. v. Italian Colors Rest.*,
   133 S.Ct. 2304 (2013) ............................................................................. 15

*Arthur Andersen LLP v. Carlisle*,
   556 U.S. 624 (2009) ................................................................................ 12

*Banus v. Citigroup Global Mkts., Inc.*,
   2010 WL 1643780 (S.D.N.Y. Apr. 23, 2010) ......................................... 15

*Buckeye Check Cashing, Inc. v. Cardegna*,
   546 U.S. 440 (2006) ................................................................................ 10

*Cap Gemini Ernst & Young, U.S., L.L.C. v. Nackel*,
   346 F.3d 360 (2d Cir. 2003) .................................................................... 10

*Cargill Int'l S.A. v. M/T Pavel Dybenko*,
   991 F.2d 1012 (2d Cir. 1993) .................................................................. 14

*Choctaw Generation Ltd. P'ship v. Am. Home Assurance Co.*,
   271 F.3d 403 (2d Cir. 2001) .................................................................... 12

*CompuCredit Corp. v. Greenwood*,
   132 S.Ct. 665 (2012) ................................................................................. 9

*Dean Witter Reynolds Inc. v. Byrd*,
   470 U.S. 213 (1985) ................................................................................... 9

*Denney v. BDO Seidman, LLP*,
   412 F.3d 58 (2d Cir. 2005) ................................................................... 9, 13

*EA Independent Franchisee Ass'n, LLC v. Edible Arrangements Int'l, Inc.*,
   2012 WL 5878657 (D. Conn. Nov. 21, 2012) ........................................... 9

*Filloramo v. NewAlliance Invs., Inc.*,
   2007 WL 1206736 (D. Conn. Apr. 23, 2007) ......................................... 14

*In re A2P SMS Antitrust Litig.*,
   2013 WL 5202824 (S.D.N.Y. Sept. 16, 2013) ................................... 13, 14

*Jamaica Hosp. Med. Ctr., Inc. v. United Health Group, Inc.*,
   584 F. Supp.2d 489 (E.D.N.Y. 2008) ..................................................... 13

*JLM Indus. v. Stolt-Nielsen SA*,
   387 F.3d 163 (2d Cir. 2004) ............................................................... 12, 13

*Joliat v. Majella Found.*,
    2013 WL 495284 (D. Conn. Feb. 6, 2013) ........................................................ 12, 13

*Lloyd v. J.P. Morgan Chase & Co.*,
    2013 WL 4828588 (S.D.N.Y. Sept. 9, 2013) ........................................................ 15

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
    460 U.S. 1 (1983) ........................................................ 11

*Oldroyd v. Elmira Sav. Bank, FSB*,
    134 F.3d 72 (2d Cir. 1998) ........................................................ 11

*Rent-A-Center W., Inc. v. Jackson*,
    561 U.S. 63, 130 S. Ct. 2772 (2010) ........................................................ 10

*Smith/Enron Cogeneration Ltd. P'ship v. Smith Cogeneration Int'l , Inc.*,
    198 F.3d 88 (2d Cir. 1999) ........................................................ 13

*Spear, Leeds & Kellogg v. Cent. Life Assurance Co.*,
    85 F.3d 21 (2d Cir. 1996) ........................................................ 14

*Sutherland v. Ernst & Young LLP*,
    726 F.3d 290 (2d Cir. 2013) ........................................................ 15

**Statutes**

18 U.S.C. § 1961(6) ........................................................ 7

9 U.S.C. § 2 ........................................................ 9

9 U.S.C. §§ 1-16 ........................................................ 1

**Other Authorities**

21 R. Lord, Williston on Contracts § 57:19, at 183 (4th ed. 2001) ........................................................ 12

**Rules**

Fed. R. Civ. P. 12(b)(6), 19 ........................................................ 1

## PRELIMINARY STATEMENT

Defendant Missouri Bank and Trust ("Missouri Bank") respectfully moves this Court pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1-16, for an order compelling Plaintiff Christopher Graham ("Graham")[1] to arbitrate each of his claims against Missouri Bank in this action, staying this action pending arbitration, and granting such other, further and different relief as this Court deems just and proper.[2]

Graham asserts claims on behalf of himself and a class of plaintiffs against Missouri Bank and five other banks who allegedly provide services in connection with the processing of electronic payments. Relevant to Missouri Bank, Graham alleges that he applied for and received a loan from an online lender named Silver Cloud Financial ("Silver Cloud"). Graham claims that his loans were usurious under the laws of Connecticut, and that he was damaged by having to pay usurious amounts of interest in order to pay off his loans. Graham alleges that one of these payments was made through an automatic debit transaction in his personal bank account for which Missouri Bank conveyed an instruction to another bank to effect the debit. Though Missouri Bank was not the lender or the holder of the loans, Graham nonetheless asserts that

---

[1]    Plaintiff Ellen Russo ("Russo") also brings claims against Missouri Bank. Russo's claims concern an alleged loan she entered into with American Web Loan ("AWL") in 2011, and payments that she allegedly made in connection with that loan during 2011. Missouri Bank does not bring this motion to compel against Plaintiff Russo because Missouri Bank has no record of any 2011 transaction involving AWL, and did not perform any ACH-related services for AWL until 2012 at the earliest. Missouri Bank reserves the right to move to compel arbitration with Russo should it become aware of a relevant transaction involving her.

[2]    Missouri Bank is also alternatively filing a motion to dismiss, pursuant to F.R.C.P. 12(b)(6) and 19, seeking entry of an order dismissing each of the claims that both Plaintiffs assert against Missouri Bank for failure to state a cause of action. Missouri Bank respectfully requests that before the Court considers the motion to dismiss, it should first decide the threshold question of whether Graham must pursue his claims in arbitration on an individual basis rather than litigating them on a class-wide basis.

without Missouri Bank's participation in the transaction as an Originating Depository Financial Institution ("ODFI"), the loans could not have been made, and he would not have been damaged.

All of Graham's claims stem from his allegation that his loans were unlawful. Each of the loan documents signed by Graham states in clear terms that he (1) agreed to arbitrate any and all disputes arising from or relating to his loans, including tort claims as well as claims against related third parties, (2) agreed not to pursue such claims in court, and (3) waived his rights to represent a class or to participate in a class action in any forum. Graham also agreed that if any dispute arose as to whether an issue was subject to arbitration in the first place, that dispute also must be submitted to an arbitrator. Accordingly, Graham may not bring any action in this Court, and may not bring a class action in any forum.

## **BACKGROUND**

### A. **Graham Agreed to Arbitrate All Disputes Arising From or Relating to His Loan Agreements.**

Graham alleges that on or about March 15, 2013, he applied for and obtained a loan in the amount of $800.00 from Silver Cloud Financial ("Silver Cloud"), which was doing business under the domain name of www.silvercloudfinancial.com. (Compl., ¶¶ 19d, 84.) Graham further alleges that on or about May 14, 2013, he applied for and obtained a second loan in the amount of $1,000 from Silver Cloud. (*Id.* ¶ 87.) As to both loans, Graham admits he "authorized Silver Cloud Financial to debit his checking account with Dutch Point Credit Union in order to repay the loan." (*Id.* ¶¶ 84, 87.) Graham claims that on or about July 12, 2013, Silver Cloud initiated a debit transaction from his checking account by instructing Dutch Point Credit

Union to debit his account (presumably in connection with the second loan); he alleges that the ODFI that passed on the debit instruction was Missouri Bank.  (*Id.* ¶ 89.)[3]

Though Graham makes numerous other references to his lenders and his loans, he does not attach either of his Loan Agreements to his Complaint.  Copies of the Loan Agreements are attached hereto as Exhibits A and B.

Graham electronically signed his Loan Agreements on March 15, 2013 and May 14, 2013, respectively.  (Ex. A, p. 4; Ex. B, p. 4.)  The Loan Agreements include Graham's express authorization for Silver Cloud to initiate credit and debit entries to his bank account.  (Ex. A, p. 4; Ex. B, p. 4.)

The Loan Agreements contain a section, immediately following their basic terms, titled "RESOLVING DISPUTES; WAIVER OF JURY TRIAL AND ARBITRATION PROVISION" (the "Arbitration Agreement").  After briefly explaining differences between arbitration and litigation, the Arbitration Agreement states:

> Unless You opt out of the arbitration process set forth below, We will follow Our policy of arbitrating all disputes with customers, including the scope and validity of this Arbitration Provision.  As part of agreeing to arbitrate any dispute, You explicitly waive any right You may have to participate in any class action against Us.

(Ex. A, p. 2; Ex. B, p. 2.)  The Arbitration Agreement then sets forth its broad scope:

> **THEREFORE, YOU ACKNOWLEDGE AND AGREE AS FOLLOWS:**
> 1. For purposes of this Agreement, the words "dispute" and "disputes" are given the broadest possible meaning and include, without limitation, (a) all claims, disputes, or controversies arising

---

[3]   Graham only alleges that Missouri Bank was involved in a single debit that appears to have been related to the May 2013 loan.  To the extent that Graham also attempts to assert claims against Missouri Bank relating to the earlier March 2013 loan, the two sets of loan documents are identical in form and substance to each other.  Where appropriate, the May 2013 and March 2013 loan documents are referred to collectively as the "Loan Agreements."

from or relating directly or indirectly to the signing of this Arbitration Provision, the validity and scope of this Arbitration Provision and any claim or attempt to set aside this Arbitration Provision; (b) all tribal, federal or state law claims, disputes or controversies, arising from or relating directly or indirectly to this Agreement, the information You gave Us before entering into this Agreement, including the customer information application, and/or any past agreement or agreements between You and Us; (c) all counterclaims, cross-claims and third-party claims; (d) all common law claims, based upon contract, tort, fraud, or other intentional torts; (e) all claims based upon a violation of any tribal, state or federal constitution, statute or regulation; (f) all claims asserted by Us against You, including claims for money damages to collect any sum We claim You owe Us; (g) all claims asserted by You individually against Us and/or any of Our employees, agents, directors, officers, shareholders, governors, managers, members, parent company or affiliated entities (hereinafter collectively referred to as "related third parties"), including claims for money damages and/or equitable or injunctive relief; (h) all claims asserted on Your behalf by another person;…and/or (j) all claims arising from or relating directly or indirectly to the disclosure by Us or related third parties of any non-public personal information about You.

(*Id*.)

The Arbitration Agreement provides that any arbitration "shall be governed by the FAA" and that Graham may choose between two reputable, nationally recognized arbitration organizations (AAA and JAMS) as the arbitration forum. (*Id.*) Graham also is entitled to advancement of his portion of arbitration expenses, including filing, administrative, hearing and arbitrator's fees. (Ex. A, p. 3; Ex. B, p. 3.) Graham also had the ability to opt out of the Arbitration Agreement. (*Id.*) He does not allege that he has opted out.

Finally, the Loan Agreements and specifically the Arbitration Agreement contained therein clearly state that Graham has agreed to waive his right to participate in a class action as a class representative or otherwise:

As part of agreeing to arbitrate any dispute, You explicitly waive any right You may have to participate in any class action against Us.

**THEREFORE, YOU ACKNOWLEDGE AND AGREE AS FOLLOWS:**

…

2. You acknowledge and agree that by entering into this Arbitration Provision:

…

(c) YOU ARE GIVING UP YOUR RIGHT TO SERVE AS A REPRESENTATIVE, AS A PRIVATE ATTORNEY GENERAL, OR IN ANY OTHER REPRESENTATIVE CAPACITY, AND/OR TO PARTICIPATE AS A MEMBER OF A CLASS OF CLAIMANTS, IN ANY LAWSUIT FILED AGAINST US AND/OR RELATED THIRD PARTIES.

3. All disputes including any Representative Claims against Us and/or related third parties shall be resolved by binding arbitration only on an individual basis with You. THEREFORE, THE ARBITRATOR SHALL NOT CONDUCT CLASS ARBITRATION; THAT IS, THE ARBITRATOR SHALL NOT ALLOW YOU TO SERVE AS A REPRESENTATIVE, AS A PRIVATE ATTORNEY GENERAL, OR IN ANY OTHER REPRESENTATIVE CAPACITY FOR OTHERS IN THE ARBITRATION.

(Ex. A, p. 2; Ex. B, p. 2.).

### B.    Graham Filed This Lawsuit Despite His Agreement to Arbitrate.

On October 4, 2013, Graham filed the instant lawsuit.  He has not named Silver Cloud or any other lenders as defendants.  Instead, he has sued only Missouri Bank and various other banks that allegedly initiated debit transactions in connection with other alleged payday loans.[4] Despite his agreement not to represent a class of plaintiffs or to participate in a class action, Graham styles his Complaint as a putative class action brought on behalf of other residents of Connecticut and twelve other states (plus the District of Columbia) for whom one of the Defendants processed a debit "on behalf of an Out-of-State Payday Lender in repayment of a

---

[4]    Graham does not allege any facts suggesting any relationship among the several Defendants.

5

loan which was illegal under the law of their respective state at the time of the debit." (Compl. ¶ 114.) Graham asserts claims against Missouri Bank under the federal Racketeer Influenced Corrupt Organizations ("RICO") statute as well as a variety of Connecticut statutory and common law claims. (*Id.* ¶¶ 189-205, 223-257).[5] The complaint seeks money damages (including trebled damages under RICO) and injunctive relief. (*Id.*, ¶¶ 258-259)

All of Graham's claims concern Missouri Bank's role as a participant in this debit transaction, which took place via the Automatic Clearing House ("ACH") Network. Only qualified banks that are members of the ACH Network may deliver payment instructions in ACH transactions. The bank that originates such a transaction by making an instruction is the ODFI; the bank that receives the instruction is the Receiving Depositiory Financial Institution ("RDFI"). Graham alleges that an ACH transaction takes place when (i) an accountholder (which in this case is Graham himself) "authorizes a transaction with a merchant—the business or person providing a good or service," (ii) the merchant then "communicates the authorization to its ODFI" (a member bank of the ACH network), (iii) the "ODFI then transmits the ACH debit or credit through the pass-through 'ACH Operator' to the accountholder's bank, known as the Receiving Depository Financial Institution ("RDFI")", and (iv) the RDFI "actually makes the credit or debit on its customer's checking or savings account." (*Id.* ¶ 43.) In the transaction at issue involving Missouri Bank, Graham contends that Missouri Bank acted as ODFI for a loan repayment of $262.50, which Graham had agreed to make to Silver Cloud, and authorized Silver Cloud to debit from his account through an ACH debit transaction. (*Id.* ¶¶ 89; Ex. A, p. 4; Ex. B, p. 4.)

---

[5]      The specific counts brought against Missouri Bank are counts Nine (RICO), Ten (RICO conspiracy), Thirteen (assumpsit), Fourteen (aiding and abetting violations of Connecticut's usury statute), Fifteen (aiding and abetting violations of Connecticut's Small Loan Law), and Sixteen (violations of the Connecticut Unfair Trade Practices Act).

Graham alleges throughout his Complaint that the underlying loans are illegal under Connecticut law.  (*See* Compl. ¶ 9 ("…will credit or debit funds in states in which the Out-of-State Payday Lenders' loans are illegal and unenforceable."); ¶ 19d (alleging that Silver Cloud made "illegal payday loans" throughout the relevant period); ¶ 114; (definition of class and sub-class specifically refers to "repayment of a loan which was illegal under Connecticut law"); ¶ 117 (listing as a common question of fact and/or law requiring resolution "whether payday loans are usurious and unenforceable under state or federal law"); ¶¶ 236, 247 (referring to "unlawful payday loans"); ¶¶ 19d, 239 (referring to "illegal payday loans"); ¶¶ 7, 9, 198c, 203c, 225 (referring to debts as "illegal and unenforceable").)

Graham further alleges that the underlying loans constituted "unlawful debts" under 18 U.S.C. § 1961(6), which provides the sole predicate for his allegation that Missouri Bank violated the Racketeering Influenced and Corrupt Organizations Act ("RICO").  (*See* Compl. ¶ 19d (alleging that Silver Cloud "maintains a website . . . for the purpose of making illegal Out-Of-State Payday Loans;") ¶¶ 196, 198-199, 202-204 (alleging that Graham's RICO counts against Missouri Bank are premised on the collection of unlawful debts).)  Graham does not anywhere allege that any Defendant engaged in a "pattern of racketeering activity," meaning that his RICO claims are dependent on his ability to demonstrate the existence of an unlawful debt.

Though Graham does not point to any agreement between himself and Missouri Bank (or any other Defendant), he alleges that Missouri Bank is liable to him because of its role in providing services relating to his ACH debit transaction as described above.  Graham repeatedly alleges that the involvement of Missouri Bank and other ODFIs to this process is essential to the very existence of the transactions he is challenging as illegal.  (See *Id.* ¶ 7 (stating that "it would be impossible" for payday lenders to deposit loan proceeds or effect debit payments without the

7

Defendants' involvement); ¶ 37 ("This scheme could not have been accomplished without the complicity of Defendants…."); ¶ 244-246 (alleging that Defendants provided "necessary" access to the ACH Network); ¶ 234 ("Defendants' provided substantial assistance to – and profited from – the illegal lending activities of the Out-Of-State Payday Lenders.")).

The Complaint also expressly attempts to paint Missouri Bank as a co-conspirator with payday lenders.  (See *Id.* ¶ 8 (alleging that Defendants "work[] on behalf of Out-Of-State Payday Lenders to 'originate' ACH entries"); ¶ 10 ("Defendants' illegal schemes with Out-Of-State Payday Lenders have victimized Plaintiffs and millions of others"); ¶¶ 201-205 (asserting a RICO conspiracy count against Missouri Bank based on an alleged conspiracy between Missouri Bank and payday lenders.)).

## **ARGUMENT**

Graham's claims against Missouri Bank are subject to arbitration because they fall within the express language of the broad Arbitration Agreement in his Loan Agreements.  Though Missouri Bank is not a signatory to the Arbitration Agreement, it is entitled to invoke it under principles of equitable estoppel and as a third party beneficiary of the Arbitration Agreement.  In addition, Graham is bound not to bring an action in any forum on behalf of a class.

Four other defendants—First International, First Premier, NABC and BMO Harris Bank—have already filed motions to compel arbitration on grounds similar to those asserted herein.  Missouri Bank hereby incorporates the arguments raised in the briefs submitted by those defendants, and in the interests of economy, briefly summarizes the arguments most germane to its motion herein.

**A.  Graham's Claims Are Subject to Arbitration.**

  1. The Federal Arbitration Act Mandates Arbitration of Graham's Claims.

The Arbitration Agreement is by its own terms governed by the FAA.  Section 2 of the FAA provides that a "contract evidencing a transaction involving commerce…shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  Section 2 of the FAA further "requires courts to enforce [arbitration] agreements…according to their terms."  *CompuCredit Corp. v. Greenwood*, 132 S.Ct. 665, 669 (2012) (*citing Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 221 (1985)); *see* 9 U.S.C. § 2.  The Second Circuit recognizes the strong federal and state policy favoring arbitration.  *See, e.g., Denney v. BDO Seidman, LLP*, 412 F.3d 58, 68-69 (2d Cir. 2005); *EA Independent Franchisee Ass'n, LLC v. Edible Arrangements Int'l, Inc.*, No. 3:10-cv-1489 (WWE), 2012 WL 5878657, at *1 (D. Conn. Nov. 21, 2012) (Eginton, J.) ("In evaluating a motion under the FAA, 'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.'")(citation omitted).

  With respect to arbitration, the two issues before the Court are whether Graham agreed to arbitrate the claims asserted in his Complaint, and whether Missouri Bank as a non-signatory is entitled to invoke the Arbitration Agreement in the same manner as a signatory.  The first question is for the arbitrator to decide, since Graham expressly agreed to arbitrate questions regarding the scope of the Arbitration Agreement, though there is no doubt that Graham's claims fall well within its broad scope.  The second question should be resolved in Missouri Bank's favor under well-settled law.

2.      Graham Agreed to Arbitrate Each of His Claims and The Plain Terms of the Arbitration Provisions Cover Each of His Claims

In considering a motion to compel arbitration, the Court must look at: (1) whether the parties agreed to arbitrate; and (2) whether the scope of the arbitration provision covers Graham's claims.  *Cap Gemini Ernst & Young, U.S., L.L.C. v. Nackel*, 346 F.3d 360, 365 (2d Cir. 2003). There is no question that by signing the Loan Agreements, Graham accepted their terms and specifically assented to their arbitration provisions.[6]  He also accepted the loan proceeds, which acceptance was conditioned on his consent to the Arbitration Agreement and all of its terms.  (Compl., ¶¶ 84, 87.)  The first prong is thus satisfied.

As for the second prong, it is well-settled that "parties can agree to arbitrate 'gateway' questions of 'arbitrability,'" and that this includes whether a plaintiff's claims fall within the scope of the arbitration agreement.  *Rent-A-Center W., Inc. v. Jackson,* 561 U.S. 63, 130 S. Ct. 2772, 2777 (2010); *see also Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 449 (2006) (holding that a challenge to the validity of a contract as a whole, as opposed to the arbitration clause specifically, is for the arbitrator to decide).  Here, the definition of "dispute" in the Arbitration Agreement expressly includes claims and controversies "arising from or relating directly or indirectly to…the validity and scope of this Arbitration Provision."  (Ex. A, p. 2; Ex. B, p. 2.)  Graham has thus expressly agreed that an arbitrator (and not this Court) should decide whether his claims fall within the scope of the Arbitration Agreement.

---

[6]      The Loan Agreements put Graham on notice that "[b]y electronically signing this Agreement below, … You acknowledge, represent and warrant that: (a) You have read, understand, and agree to all of the terms and conditions of this Agreement, including the Arbitration Agreement and the waivers contained in the Arbitration Agreement of any rights to a jury trial and any rights to participate in class proceedings…."  (Loan Agreements, Exs. A and B, at p. 5.)

Should this Court determine that it should decide on matters involving the scope of the Arbitration Agreement, it should find that Graham's claims are subject to arbitration. The words "arising from or relating directly or indirectly to," which are used in the Arbitration Agreement and many other arbitration provisions, are commonly understood to mean that the provision should be read broadly. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 6 (1983); *see also Oldroyd v. Elmira Sav. Bank, FSB*, 134 F.3d 72, 76 (2d Cir. 1998) (recognizing an arbitration clause using the words "arising under or in connection with" to be "the prototypical broad arbitration provision"). Underscoring the breadth of Graham's Arbitration Agreement, a long, non-exhaustive list of claims and situations follows the words "arising from or relating directly or indirectly to." The Arbitration Agreement expressly covers, for instance: (i) "all tribal, federal or state law claims, disputes or controversies" arising from or relating to the Loan Agreement, (ii) common law tort claims, (iii) federal and state statutory claims, and (iv) claims against "related third parties" (see further discussion *infra*, pp. 11-15). The Arbitration Agreement also expressly covers class actions and other representative claims. (Ex. A, p. 2, Ex. B, p. 2.)

Accordingly, as Graham agreed to arbitrate each of his claims related to his loan and the claims at issue here fall within the scope of the Arbitration Agreement, Graham must arbitrate his claims against Missouri Bank.

**B.     Missouri Bank Is Entitled To Invoke Graham's Arbitration Agreement.**

As discussed at length in the other Defendants' motions to compel arbitration, it is widely recognized that a nonsignatory to an arbitration agreement can invoke the terms of that agreement. If the law were otherwise, a plaintiff could easily avoid arbitration through artful pleading, as Graham has attempted to do here. Also, litigation with a nonsignatory may affect and prejudice the rights of the absent signatory.

Recognizing this, courts hold that nonsignatories may invoke arbitration agreements in certain circumstances. In *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624 (2009), the Supreme Court explained that "[b]ecause 'traditional principles' of state law allow a contract to be enforced by or against nonparties to the contract through 'assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver and estoppel,'" a "litigant who was not a party to the relevant arbitration agreement may invoke [the FAA] if the relevant state contract law allows him to enforce the agreement." *Id*. at 631-632 (quoting 21 R. Lord, Williston on Contracts § 57:19, at 183 (4th ed. 2001).

At least two such principles apply here. First, Graham is equitably estopped from avoiding his agreement to arbitrate. Second, Graham's allegations would render Missouri Bank a third party beneficiary of the Arbitration Agreement.

1.     Graham Is Equitably Estopped from Litigating His Claims Against Missouri Bank

"[U]nder principles of estoppel, a non-signatory to an arbitration agreement may compel a signatory to that agreement to arbitrate a dispute where a careful review of the relationship among the parties, the contracts they signed, and the issues that had arisen among them discloses that the issues the non-signatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed." *JLM Indus. v. Stolt-Nielsen SA,* 387 F.3d 163, 177 (2d Cir. 2004)(citation omitted); *Joliat v. Majella Found.,* No. 3:12-cv-00551 (AWT), 2013 WL 495284, at *4 (D. Conn. Feb. 6, 2013). In determining whether a signatory's claims are intertwined with the underlying contract obligations, courts examine whether the issues to be resolved are intertwined with the subject matter of the contract, and whether there is a relationship among the parties of a nature that justifies invoking the arbitration provision. *See Choctaw Generation Ltd. P'ship v. Am. Home Assurance Co.*, 271 F.3d 403, 406 (2d Cir. 2001).

Graham's factual allegations demonstrate that his claims arise directly from the subject matter of his Loan Agreements.  Each claim turns on Plaintiff's allegations that the Loan Agreements are usurious, which necessarily implicates the Loan Agreements' payment terms. The case is thus closely analogous to other recent situations in which courts have found extra-contractual claims to be intertwined with contracts containing arbitration clauses.  *See, e.g., In re A2P SMS Antitrust Litig.*, Case No. 12-cv-2656 (AJN), 2013 WL 5202824, at *7 (S.D.N.Y. Sept. 16, 2013); *Joliat*, 2013 WL 495284, at *4 (D. Conn. Feb. 6, 2013); *Jamaica Hosp. Med. Ctr., Inc. v. United Health Group, Inc.*, 584 F. Supp.2d 489, 497 (E.D.N.Y. 2008).

In addition, Graham alleges a relationship between Missouri Bank and Silver Cloud that justifies entry of an order compelling him to arbitrate his claims.  He repeatedly alleges that Missouri Bank "acted in concert" with payday lenders such as Silver Cloud and that it was an essential participant in the transaction of which he complains.  Courts in this Circuit have repeatedly held that similar allegations that the signatory and non-signatory defendants acted in concert to perpetrate misconduct, treating the signatory and non-signatory defendants as a "single unit", or treating the non-signatory defendant as a party bound up in the original contract, are sufficient to find the existence of a "close relationship[.]"  *See Denney v. BDO Seidman, LLP*, 412 F.3d 58, 70 (2d Cir. 2005); *Smith/Enron Cogeneration Ltd. P'ship v. Smith Cogeneration Int'l , Inc.*, 198 F.3d 88, 97-98 (2d Cir. 1999); *JLM Indus*, 387 F.3d at 178.  In alleging a close relationship between Missouri Bank and his lender, Plaintiff has conceded that their relationship is substantially interdependent such that Missouri Bank can invoke the terms of the Arbitration Agreement.  *See Denney*, 412 F.3d at 70.

Finally, as discussed in the next section, Missouri Bank's role in the transaction was clearly disclosed to Graham, who specifically authorized that his bank account be debited

through an ACH transaction.  This fact also supports a finding of equitable estoppel.  *See In re A2P,* 2013 WL 5202824, at *7 (finding that estoppel applied to claims against a non signatory agent of a signatory to the contract, even though non signatory was not identified by name, since its role was defined).

        2.     <u>Missouri Bank Is a Third Party Beneficiary of the Arbitration Agreement.</u>

Missouri Bank is also entitled to enforce the Arbitration Agreement in Graham's Loan Agreements because it is alleged to be a "related third party" under the Loan Agreements.  The Second Circuit has established that a third party beneficiary may seek specific performance of an agreement to arbitrate.  *Spear, Leeds & Kellogg v. Cent. Life Assurance Co.*, 85 F.3d 21, 27 (2d Cir. 1996) (holding that insurance companies were entitled to order compelling arbitration based on their status as third party beneficiaries); *Filloramo v. NewAlliance Invs., Inc.*, No. 3:06-cv-01825, 2007 WL 1206736, at *4 (D. Conn. Apr. 23, 2007).  In determining whether a nonparty is a third party beneficiary, courts look at whether "the parties to that contract intended to confer a benefit on [the non-signatory] when contracting."  *Cargill Int'l S.A. v. M/T Pavel Dybenko*, 991 F.2d 1012, 1019-20 (2d Cir. 1993)(citation omitted).

Here, the Arbitration Agreement expressly covers Silver Cloud's "employees, agents, directors, officers, shareholders, governors, managers, members, parent company or affiliated entities" which it specifically defines as "related third parties."  (Ex. A, p. 2, Ex. B, p. 2.) Graham repeatedly alleges that Missouri Bank undertook certain acts on behalf of Silver Cloud in connection with the collection of his loans, and his alleged damages stem from the collection of his loans.  Missouri Bank's participation in the transaction is not alleged to be incidental; instead, Graham alleges that Missouri Bank was an essential participant because only banks can carry debit instructions within the ACH Network.  As such, if "related third parties" has any

meaning at all, it surely must refer to essential transaction participants as Missouri Bank is alleged to be.

Accordingly, Missouri Bank is entitled to compel arbitration of Graham's claims against it as a third-party beneficiary of the Loan Agreements.

### C.      Plaintiff Waived His Right to Bring a Class Action.

Notwithstanding Graham's agreement to arbitrate his claims, he has also sought to pursue this litigation on behalf of a putative class.  This directly conflicts with his contractual promise not to institute a class action.  In the Loan Agreements Graham agreed that he "explicitly waive[ed] any right [he] may have to participate in any class action."  In addition, he agreed that he was "giving up [his] right to serve as a representative…and/or participate as a member of a class…," and that "[a]ll disputes including any Representative Claims against Us and/or related third parties shall be resolved by binding arbitration…."  (Ex. A, p. 2; Ex. B p. 2.)

This class action waiver is enforceable and such waivers have consistently been upheld by the courts.  *See, e.g., Am. Express Co. v. Italian Colors Rest.*, 133 S.Ct. 2304 (2013) (holding that class action waivers should be enforced and that respondents were required to submit their claims to bilateral arbitration); *Sutherland v. Ernst & Young LLP*, 726 F.3d 290 (2d Cir. 2013) (holding that alleged expense of proceeding individually in arbitration was an insufficient basis to invalidate the class action waiver at issue); *Lloyd v. J.P. Morgan Chase & Co.*, No. 11 Civ. 9305 (LTS), 2013 WL 4828588 (S.D.N.Y. Sept. 9, 2013) (finding that class action waiver in arbitration agreement was enforceable, granting motion to compel and dismissing claims with respect to plaintiffs who opted into binding arbitration agreement); *Banus v. Citigroup Global Mkts., Inc.*, No. 09 Civ. 7128 (LAK), 2010 WL 1643780 (S.D.N.Y. Apr. 23, 2010) (holding that arbitration clauses containing class action waivers were enforceable and that plaintiffs were

bound to arbitrate all of their claims).  Accordingly, Graham is not permitted to pursue a class action in any forum.

## **CONCLUSION**

For all the foregoing reasons, Missouri Bank respectfully requests that this Court grant its motion in all respects and (i) compel arbitration of the claims asserted by Plaintiff Graham in this action against Missouri Bank, (ii) stay this action pending arbitration, and (iii) grant such other further and different relief as this Court may deem just and proper.

Dated:  January 13, 2014

Respectfully submitted by,

BRYAN CAVE LLP,

//s// Robert M. Thompson
Robert M. Thompson, *pro hac vice*
Ashley N. Gillard, *pro hac vice*
BRYAN CAVE LLP
One Kansas City Place
1200 Main St.
Kansas City, MO 64105
rmthompson@bryancave.com
ashley.gillard@bryancave.com
(816) 374-3200
(816) 374-3300 (fax)

Michael P. Carey
BRYAN CAVE LLP
One Atlantic Center, Fourteenth Floor
1021 W. Peachtree St., N.W.
Atlanta, GA 30309
404 572 6600
404 572 6999 (fax)
michael.carey@bryancave.com

16

Christine B. Cesare, Ct Bar No. 412295
1290 Avenue of The Americas
New York, NY   10104-3300
(212) 541-1228
(212) 904-0506 (fax)
cbcesare@bryancave.com

ATTORNEYS FOR DEFENDANT
MISSOURI BANK AND TRUST

17

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 13, 2014, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

//s//Robert M. Thompson
Robert M. Thompson, *pro hac vice*
rmthompson@bryancave.com

18