# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | |
|---|---|
| CHRISTOPHER GRAHAM, and ELLEN RUSSO, on Behalf of Themselves and All Others Similarly Situated, : : : : | |
| Plaintiffs, : : | CASE NO.  3:13-cv-01460 (WWE) |
| v. : : | |
| BMO HARRIS BANK, N.A., NATIONAL BANK OF CALIFORNIA, N.A., FIRST INTERNATIONAL BANK & TRUST, a North Dakota State-Chartered Bank, FIRST PREMIER BANK, a South Dakota State-Chartered Bank, MISSOURI BANK AND TRUST, a Missouri-Chartered Bank, and NORTH AMERICAN BANKING COMPANY, a Minnesota State-Chartered Bank, : : : : : : : : : : : | |
| Defendants. : | January 29, 2014 |

## DEFENDANT NORTH AMERICAN BANKING COMPANY'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO COMPEL ARBITRATION

**TABLE OF CONTENTS**

INTRODUCTION .................................................................................................................. 1

ARGUMENT .......................................................................................................................... 2

    I.      The Arbitration Agreement Delegates "Gateway" Arbitrability Questions to the Arbitrator .................................................................................................. 2

    II.     Plaintiff Cannot Avoid Arbitration by Challenging the Validity of the Loan Agreement ................................................................................................. 3

    III.    NABC Is an Intended Third-Party Beneficiary of the Arbitration Agreement ........................................................................................................... 4

    IV.    Plaintiff's Allegations Entitle NABC to Enforce the Arbitration Agreement Under Agency Principles ................................................................ 5

    V.     Plaintiff Is Equitably Estopped from Avoiding His Agreement to Arbitrate ......... 7

CONCLUSION ..................................................................................................................... 10

# **TABLE OF AUTHORITIES**

**CASES**

*Beckenstein v. Potter & Carrier, Inc.*, 464 A.2d 6 (Conn. 1983) .................................................. 6

*Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440 (2006) ............................................ 3, 10

*Camferdam v. Ernst & Young Int'l, Inc.*, No. 02 Civ. 10100, 2004 WL 307292 (S.D.N.Y. Feb. 13, 2004) ............................................................................................................................ 9

*Carroll v. Lebouef, Lamb, Greene & MacRae, L.L.P.*, 374 F. Supp. 2d 375 (S.D.N.Y. 2005) ................................................................................................................................... 9

*Chase Mortg. Co.-W. v. Bankers Trust Co.*, No. 00 CIV. 8150, 2001 WL 547224 (S.D.N.Y. May 23, 2001) ...................................................................................................... 8

*Contec Corp. v. Remote Solution Co.*, 398 F.3d 205 (2d Cir. 2005) ............................................. 2

*Dow & Condon, Inc. v. Brookfield Dev. Corp.*, 833 A.2d 908 (Conn. 2003) ............................ 4, 5

*Holzer v. Mandadori*, No. 12 Civ. 5234, 2013 WL 1104269 (S.D.N.Y. Mar. 14, 2013) ........... 2, 3

*In re A2P SMS Antitrust Litig.*, -- F. Supp. 2d --, No. 12-cv-2656, 2013 WL 5202824 (S.D.N.Y. Sept. 16, 2013) ................................................................................................ 9, 10

*In re Apple & AT & TM Antitrust Litig.*, 826 F. Supp. 2d 1168 (N.D. Cal. 2011) ......................... 9

*In re Currency Conversion Fee Antitrust Litig.*, 265 F. Supp. 2d 385 (S.D.N.Y. 2003) ................ 8

*JLM Indus., Inc. v. Stolt-Nielsen SA*, 387 F.3d 163 (2d Cir. 2004) ............................................... 8

*Laumann v. Nat'l Hockey League*, No. 12 Civ. 1817, 2013 WL 6171671 (S.D.N.Y. Nov. 25, 2013) .................................................................................................................................. 2

*Parm v. BMO Harris*, No. 1:13-cv-03326 (N.D. Ga.) .............................................................. 1, 6

*Republic of Iraq v. BNP Paribas USA*, 472 F. App'x 11 (2d. Cir. 2012) ...................................... 2

*Ross v. American Express Co.*, 547 F.3d 137 (2d Cir. 2008) ........................................................ 9

*Sokol Holdings, Inc. v. BMB Munai, Inc.*, 542 F.3d 354 (2d Cir. 2008) ....................................... 9

*Wallace v. Rick Case Auto, Inc.*, No. 1:12-cv-4721, 2013 WL 5770996 (N.D. Ga. Oct. 23, 2013) .................................................................................................................................. 7

**STATUTES**

Law and Order Code of the Chippewa Cree Tribe § 1.9 (1987) .................................................... 7

**INTRODUCTION**

In its opening brief, NABC demonstrated that it is entitled to enforce the arbitration agreement between Plaintiff and his lender, Plain Green, for at least three reasons: NABC is a third-party beneficiary of the agreement; NABC is an alleged agent of Plain Green; and equity estops Plaintiff from avoiding arbitration by suing NABC instead of Plain Green. NABC also demonstrated that, because the agreement contains a broad delegation clause, Plaintiff's arguments to the contrary must be decided by the arbitrator.

In response, Plaintiff asks the Court to ignore Supreme Court precedent and set aside the arbitration agreement because the underlying contract is supposedly invalid. Plaintiff also asks the Court to ignore the plain language of the arbitration agreement, the allegations in his Complaint, and his attorneys' contradictory legal positions in a companion case. For example, although the Complaint is rife with allegations that NABC collected debts "on behalf" of Plain Green, Plaintiff now claims NABC is neither a debt collector nor Plain Green's agent. Plaintiff's contention is directly contrary to his attorneys' position in *Parm v. BMO Harris*, No. 1:13-cv-03326 (N.D. Ga.), in which counsel allege that NABC acted as Plain Green's "agent" when processing ACH transfers. But more importantly, Plaintiff is bound by the allegations in *his* Complaint. Those allegations, the plain terms of the loan agreement, and settled principles of contract law require arbitration here.

Plaintiff characterizes NABC's motion as a "shameless" attempt to deny him "access to this Court." (Pl.'s Mem. at 5.) But Plaintiff does not dispute that he agreed to arbitrate any claims against Plain Green's "agents" and "related third parties," including claims based on the legality of the loan and the "servicing or handling of [his] account." Nor does Plaintiff dispute that each claim against NABC is based on (1) the alleged illegality of the loan, and (2) NABC's

1

alleged actions "on behalf of" Plain Green in servicing his account. Plaintiff's efforts to avoid arbitration are thus unavailing.

## ARGUMENT

I.  **The Arbitration Agreement Delegates "Gateway" Arbitrability Questions to the Arbitrator**

Although Plaintiff's arbitration agreement requires him to arbitrate "any issue concerning the validity, enforceability, or scope of this loan or the Agreement to Arbitrate," Plaintiff contends that the Court, and not the arbitrator, should decide "gateway" arbitrability issues. (Pl.'s Mem. at 8.) The Second Circuit's decision in *Contec Corp. v. Remote Solution Co.*, 398 F.3d 205 (2d Cir. 2005), defeats Plaintiff's argument. In *Contec*, the Second Circuit held that whether a non-signatory could compel arbitration was an issue for the arbitrator, not the court, because the plaintiff's claims were "intertwined" with the underlying contract. *Id.* at 209-11. As discussed below, each claim against NABC is based on the alleged illegality of one contract term (the interest rate) and NABC's alleged role in facilitating the performance of another (the ACH authorization). *Contec* thus requires delegation of "gateway" issues to the arbitrator.

The unpublished decisions cited in Plaintiff's brief do not support a different result. (*See* Pl.'s Mem. at 8-10.) The arbitration agreements in those cases did not contain broad delegation clauses; they simply incorporated arbitration rules giving the arbitrator the power to address gateway issues. *See Republic of Iraq v. BNP Paribas USA*, 472 F. App'x 11, 12-13 (2d. Cir. 2012); *Holzer v. Mandadori*, No. 12 Civ. 5234, 2013 WL 1104269, at *8 (S.D.N.Y. Mar. 14, 2013); *Laumann v. Nat'l Hockey League*, No. 12 Civ. 1817, 2013 WL 6171671, at *2, *5 (S.D.N.Y. Nov. 25, 2013) (discussion of DIRECTV agreement). Moreover, the agreements in two of the cases limited their scope to disputes between the parties. *See Iraq*, 472 F. App'x at

12; *Holzer*, 2013 WL 1104269, at *3.  Here, by contrast, the arbitration agreement provides for arbitration with "related third parties" like NABC.  (Rosette Decl. Ex. 3 at 5.)

If anything, Plaintiff's cases stand for the unremarkable proposition that incorporation of an arbitrator's rules does not, by itself, constitute "clear and unmistakable intent" to delegate whether a non-signatory can compel arbitration.  That principle is irrelevant here, as the plain language of the arbitration agreement demonstrates the parties' intent to delegate gateway issues of arbitrability.

## II. Plaintiff Cannot Avoid Arbitration by Challenging the Validity of the Loan Agreement

Plaintiff's argument that the loan was "illegal on its face" (Pl.'s Mem. at 11) is irrelevant under the FAA.  To avoid arbitration, Plaintiff must challenge the validity of the arbitration agreement itself, which is severable from the underlying contract as a matter of federal arbitration law.  *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445 (2006).  Thus, "unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance."  *Id.* at 445-46.  Plaintiff offers no authority for his assertion that Supreme Court precedent should be ignored simply because NABC is a non-signatory.

The severability principle also defeats Plaintiff's contention that "issues of fact" exist regarding whether Plain Green violated the Electronic Funds Transfer Act by conditioning the loan on preauthorization of an ACH transaction.  (Pl.'s Mem. at 12.)  Apart from the fact that Plaintiff was given the choice of paying by check or ACH transfer (Rosette Decl. Ex. 3 at 7), Plaintiff's argument goes to the validity of the loan contract as a whole.  Nothing in the arbitration agreement suggests either party's right to arbitrate was conditioned on the ACH authorization.  Indeed, Plaintiff himself emphasizes that "the arbitration provision nowhere

3

makes mention of, or even impliedly incorporates, any reference to the separate ACH authorization." (Pl.'s Mem. at 16.) Thus, to the extent Plaintiff seeks to challenge the loan's validity under the Electronic Funds Transfer Act, he must do so before the arbitrator.

### III.   NABC Is an Intended Third-Party Beneficiary of the Arbitration Agreement

If the Court reaches the merits of the arbitrability issues, the Court should permit NABC to enforce the arbitration agreement as a third-party beneficiary. Plaintiff elected to repay his loan by ACH transfer, and he expressly authorized Plain Green and its "agents" to debit his account accordingly. (Rosette Decl. Ex. 3 at 3, 7.) Plaintiff also agreed to arbitrate any claims against Plain Green's "related third parties," including its "collection agent" or "agent," related to the validity of the loan and the "servicing or handling of [Plaintiff's] account." (*Id.* at 5.) The Loan Agreement and arbitration provision thus evince a clear intent to benefit third-party service providers, like NABC, whose services were necessary to carry out the loan transaction.

Plaintiff's arguments to the contrary are without merit. Citing *Dow & Condon, Inc. v. Brookfield Development Corp.*, 833 A.2d 908 (Conn. 2003), Plaintiff contends that NABC is not a third-party beneficiary because Plaintiff himself did not intend to confer a "direct obligation" to NABC. (Pl.'s Mem. at 16-17.) But *Dow* confirms why NABC is entitled to compel arbitration. In *Dow*, the court explained why both parties (not just the promisee) must intend to confer a benefit upon the third party: the promisor, who must perform the obligation, should reasonably know the "range of potential third persons who may enforce the terms of the contract." *Id.* at 914 (quotation omitted). Here, the Loan Agreement disclosed that Plain Green would use a third party to initiate ACH debits to Plaintiff's account, and the arbitration provision stated an intent to benefit Plain Green's "related third parties." (Rosette Decl. Ex. 3 at 5, 6.) NABC thus falls squarely within the "range of potential third persons" Plaintiff reasonably can expect to enforce

the arbitration agreement. And, as in *Dow*, the Court can determine Plaintiff's intent to benefit such third persons from the plain contract language. *See* 833 A.2d at 914 (concluding that "the intent of the parties could not be clearer" from contract language).

Plaintiff also contends that NABC is not a third-party beneficiary because it is not a debt collector and cannot be Plain Green's "collection agent." (Pl.'s Mem. at 16.) A "collection agent," however, is just one example of a third-party entitled to enforce the arbitration provision. As explained in NABC's opening brief, the Loan Agreement and arbitration provision manifest an intent to benefit "related third parties" whose services were necessary to effectuate ACH transfers. (NABC Mem. at 11-13.) In any event, Plaintiff's argument is foreclosed by his own allegations. Plaintiff seeks to hold NABC liable under RICO for "collection of" the loan "on behalf of" Plain Green. (*E.g.*, Compl. ¶¶ 9, 213.) Thus, regardless of whether NABC actually is Plain Green's "collection agent," NABC is *alleged* to be a "collection agent" and is therefore entitled to arbitrate Plaintiff's claims even under Plaintiff's cramped reading of the contract.

A non-signatory need not be identified in a contract in order to enforce an arbitration clause. (NABC Mem. at 12.) Because NABC is an alleged "agent" and "related third party" of Plain Green, and because the Loan Agreement "anticipates" NABC's role in the transaction, NABC is an intended third-party beneficiary entitled to enforce the arbitration agreement between Plaintiff and Plain Green.

### IV. Plaintiff's Allegations Entitle NABC to Enforce the Arbitration Agreement Under Agency Principles

Plaintiff does not dispute that agency principles afford a second, independent basis for non-signatory enforcement of arbitration agreements. (*See* Pl.'s Mem. at 19-24.) Rather, Plaintiff contends that NABC cannot invoke this precedent because it is not an agent of Plain Green. (*Id.* at 19.) But that is not what he alleges. For purposes of establishing liability,

5

Plaintiff alleges that NABC transmitted ACH debit entries "on behalf of" and "at the request of" Plain Green.  (*E.g.*, Compl. ¶¶ 8-9, 77, 114, 213.)  Plaintiff also alleges that Plain Green dictated the terms of the debits and initiated the ACH process by submitting a debit request to NABC. (*Id.* ¶¶ 38-43.)  Plaintiff has thus alleged an agency relationship between Plain Green and NABC. *Beckenstein v. Potter & Carrier, Inc.*, 464 A.2d 6, 14 (Conn. 1983) ("[A]n essential ingredient of agency is that the agent is doing something at the behest of and for the benefit of the principal.").

Despite these allegations, Plaintiff contends that NABC cannot be an agent of Plain Green because NABC's "duties" under NACHA rules "eliminate any possibility that Plain Green 'controls' the activities of NABC."  (Pl.'s Mem. at 20.)  As First International correctly notes in its reply, Plaintiff's contention is without merit for several reasons:  not only can agents have independent legal obligations that limit what they can do for their principals (such as an attorney's independent duties as an officer of the court), but Plaintiff's entire lawsuit is based on the allegation that NABC violated the NACHA rules by processing ACH transfers for payday lenders.  (Doc. 146 at 6.)  Therefore, the notion that NABC cannot be Plain Green's agent due to NACHA rules is both incorrect as a legal matter and contrary to Plaintiff's theory of liability.

Plaintiff's contention is not only meritless, it is squarely at odds with allegations asserted by his counsel in a companion case against NABC.  (*See* 2d Decl. of Peter Schwingler in Supp. of Mot. to Compel Arbitration Ex. 1.)  In a complaint that tracks Plaintiff's nearly verbatim, counsel alleges that NABC and its co-defendants "knowingly acted as agents to the illegal lending activities of the Out-of-State Payday Lenders," including Plain Green.  (*Id*. ¶ 329; *see also id.* ¶ 328 (alleging that NABC acted as "agent" to Plain Green).)  Such a conclusion is necessary in that case to invoke a statutory claim against a lender's "agents."  (*Id.* ¶ 326.)  Thus, while counsel alleges that NABC *is* an agent of Plain Green to establish liability in another

6

action, counsel argues that NABC *cannot be* an agent of Plain Green to avoid arbitration here. The allegations in the companion case merely confirm that NABC is entitled to arbitrate the claims in the case at bar.

### V.     Plaintiff Is Equitably Estopped from Avoiding His Agreement to Arbitrate

In its opening brief, NABC established that equitable estoppel provides a third, independent basis to compel arbitration because Plaintiff's claims are intertwined with the Loan Agreement and the Complaint alleges a sufficiently close relationship between the parties. (NABC Mem. at 14-17.)  Plaintiff's arguments in opposition do not undermine this conclusion.[1]

First, Plaintiff asserts that his claims are not intertwined with the Loan Agreement because they do not rely on its terms. (Pl.'s Mem. at 25.)  But Plaintiff's Complaint relies on at least two terms in the Loan Agreement:  the interest rate term and the ACH repayment term. Each claim is predicated on the supposed illegality of the former and NABC's role in the performance of the latter. The Loan Agreement is thus central to Plaintiff's claims and not, as he suggests, a mere "but for" cause of the claims. (*Id.* at 28-29.)  Moreover, as First International correctly notes, equitable estoppel is not limited to cases involving alleged breaches of the underlying contract. (Doc. 146 at 8.)  *See, e.g.*, *Wallace v. Rick Case Auto, Inc.*, No. 1:12-cv-4721, 2013 WL 5770996, at *5-6 (N.D. Ga. Oct. 23, 2013) (holding that claims are intertwined with underlying agreement "even if the claims do not allege a breach of that particular

---

[1] Plaintiff contends the Loan Agreement is governed by the law of the Chippewa Cree Tribe of Rocky Boy's Reservation. (Pl.'s Mem. at 37 n.16.)  Under Cree law, however, the Court "may apply laws and regulations of the United States or the State of Montana" in the absence of tribal law on point. Law and Order Code of the Chippewa Cree Tribe § 1.9 (1987), *available at* http://indianlaw.mt.gov/content/chippewacree/codes/law_order_code_1987.pdf. NABC therefore cites federal case law applying equitable estoppel in the arbitration context.

agreement").[2]  Instead, courts have consistently applied equitable estoppel to compel arbitration where a plaintiff alleges that the underlying contract is invalid.  (*See* Doc. 146 at 8 (listing cases).)  That is precisely the case here, as each of Plaintiff's claims relies on the allegation that the Loan Agreement was invalid under Connecticut's usury statute.

Second, Plaintiff asserts the relationship necessary to invoke equitable estoppel is absent here because (a) he could not have expected NABC to enforce the arbitration agreement, and (b) conspiracy allegations are insufficient by themselves to establish such a relationship.  (Pl.'s Mem. at 30-37.)  The first contention is meritless; the second is inconsequential.  Plaintiff elected to authorize Plain Green and its "agents" to initiate ACH transactions – an authorization that expressly "inures to the benefit" of Plain Green's "agents" and "representatives."  (Rosette Decl. Ex. 3 at 3, 7.)  The arbitration agreement, in turn, covers any "Dispute" between Plaintiff and Plain Green "or anyone else under this Agreement," including "any claim arising from, relating to or based upon . . . the handling or servicing of [Plaintiff's] account," whether "alleged against [Plain Green] or related third parties."  (*Id*. at 5 (emphasis omitted).)  The arbitration agreement states expressly that it "benefits" Plain Green and "related third parties."  (*Id*. at 6.)  This

---

[2] *See also JLM Indus., Inc. v. Stolt-Nielsen SA*, 387 F.3d 163, 178 (2d Cir. 2004) (applying equitable estoppel in absence of allegations of breach where signatory's antitrust claim against non-signatory was "undeniably intertwined" with underlying agreements because "it is the fact of [the signatory]'s entry into the [agreements] containing allegedly inflated price terms that gives rise to the claimed injury"); *In re Currency Conversion Fee Antitrust Litig.*, 265 F. Supp. 2d 385, 402-03 (S.D.N.Y. 2003) (estopping credit card holders from avoiding arbitration with non-signatories to cardholder agreements in absence of allegations of breach because cardholders' claims were based on allegedly illegal fees charged under those agreements); *Chase Mortg. Co.-W. v. Bankers Trust Co.*, No. 00 CIV. 8150, 2001 WL 547224, at *2-3 (S.D.N.Y. May 23, 2001) (applying equitable estoppel because signatory's claims against non-signatory were intertwined with agreement under which non-signatory "has no obligations").

language put Plaintiff on notice that the arbitration agreement covered disputes with third parties involved in the ACH transactions Plaintiff elected.

Furthermore, Plaintiff's argument that conspiracy allegations alone do not establish a sufficient relationship is of no moment. NABC does not rely on the conspiracy allegations alone, but also on the allegations that NABC processed ACH debits on Plaintiff's behalf.[3] The cases Plaintiff cites in opposition are thus inapposite. In *Ross v. American Express Co.*, for example, the Second Circuit held that conspiracy allegations were insufficient to establish the necessary relationship where the non-signatory "had no role in the[] formation or performance" of the agreement containing the arbitration clause. 547 F.3d 137, 146 (2d Cir. 2008). That is plainly not the case here. Not only did NABC play a role in the performance of the Loan Agreement, that role was expressly disclosed and *elected* by Plaintiff in the Loan Agreement, and NABC's performance of it is the sole basis for Plaintiff's claims.

Plaintiff's suggestion that *Ross* and *Sokol Holdings, Inc. v. BMB Munai, Inc.*, 542 F.3d 354 (2d Cir. 2008), require a corporate affiliation between the signatory and non-signatory is similarly unavailing. (Pl.'s Mem. at 33.) "As subsequent Second Circuit cases following *Sokol Holdings* make clear, the non-signatory need not be a parent or subsidiary company of the signatory for the requisite 'relationship' to be found." *In re Apple & AT & TM Antitrust Litig.*, 826 F. Supp. 2d 1168, 1179 (N.D. Cal. 2011).

---

[3] *See, e.g.*, *Camferdam v. Ernst & Young Int'l, Inc.*, No. 02 Civ. 10100, 2004 WL 307292, at *6 (S.D.N.Y. Feb. 13, 2004) (finding allegations of agency and conspiracy among non-signatories and signatories established relationship necessary to invoke equitable estoppel); *Carroll v. Lebouef, Lamb, Greene & MacRae, L.L.P.*, 374 F. Supp. 2d 375, 377-78 (S.D.N.Y. 2005) (same); *In re A2P SMS Antitrust Litig.*, -- F. Supp. 2d --, No. 12-cv-2656, 2013 WL 5202824, at *7, *9 (S.D.N.Y. Sept. 16, 2013) (finding sufficient relationship between signatory and unnamed non-signatory where agreement referred to agents and anticipated role played by unnamed non-signatory).

Finally, Plaintiff's argument regarding the doctrine of unclean hands is irrelevant to NABC's motion, as that contention goes to the validity of the underlying contract and not the arbitration agreement itself. *Buckeye*, 546 U.S. at 445-46; *In re A2P SMS Antitrust Litig.*, 2013 WL 5202824, at *11-14 (rejecting unclean hands argument on this basis).

## **CONCLUSION**

For the reasons set forth above and in NABC's opening brief, the Court should grant NABC's motion to compel arbitration and dismiss or stay the claims against NABC.

Dated:  January 29, 2014               NORTH AMERICAN BANKING COMPANY
                                       By Its Attorneys,


                                       /s/ Todd A. Noteboom
                                       Todd A. Noteboom (PHV #06394)
                                       Peter J. Schwingler (PHV #06395)
                                       STINSON LEONARD STREET LLP
                                       150 South Fifth Street, Suite 2300
                                       Minneapolis, MN  55402
                                       (612) 335-1500(612) 335-1657 fax
                                       todd.noteboom@stinsonleonard.com
                                       peter.schwingler@stinsonleonard.com

                                       and

                                       Kim Rinehart (ct24427)
                                       John M. Doroghazi (ct28033)
                                       *Wiggin and Dana LLP*
                                       One Century Tower
                                       P.O. Box 1832
                                       New Haven, CT 06508-1832
                                       (203) 498-4400
                                       (203) 782-2889 fax
                                       krinehart@wiggin.com
                                       jdoroghazi@wiggin.com

**CERTIFICATE OF SERVICE**

    I hereby certify that on this 29th day of January, 2014, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept filing electronically.  Notice of this filing will be sent to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the court's CM/ECF System.

                                            /s/ Peter J. Schwingler
                                            Peter J. Schwingler