UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| CHRISTOPHER GRAHAM, and ELLEN RUSSO, on Behalf of Themselves and All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>BMO HARRIS BANK, N.A., NATIONAL BANK OF CALIFORNIA, N.A., FIRST INTERNATIONAL BANK & TRUST, a North Dakota State-Chartered Bank, FIRST PREMIER BANK AND TRUST, a South Dakota State-Chartered Bank, MISSOURI BANK AND TRUST, a Missouri State-Chartered Bank, and NORTH AMERICAN BANKING COMPANY, a Minnesota State-Chartered Bank,<br><br>Defendants. | Case No. 13-CV-01460<br><br>Judge Warren Eginton |

**DEFENDANT BMO HARRIS BANK, N.A.'S REPLY IN SUPPORT OF ITS
MOTION TO TRANSFER PURSUANT TO 28 U.S.C. § 1404(a)**

**INTRODUCTION**

This case is one of nine nearly identical putative class actions pending against BMO Harris Bank, N.A. ("BMO Harris") in separate districts throughout the country. The plaintiffs in each case are represented by the same counsel. Each case seeks to hold BMO Harris liable for purportedly processing ACH transactions on behalf of payday lenders.[1]

In an effort to foster efficiency and consistency, BMO Harris originally moved to transfer the claims asserted against it by Christopher Graham (and plaintiffs in other cases) to the Northern District of New York, where a tenth case, filed by William Hillick, was pending as one

---

[1] *See* Dkt. 110 ("BMO Harris Br.") at 1 n.1 (listing cases).

of two first-filed cases. Dkt. 109. Three days after BMO Harris filed the motion, Hillick voluntarily dismissed his case in the Northern District of New York. Accordingly, BMO Harris supplemented its transfer motion and requested that this Court transfer Graham's claims against BMO Harris to the Eastern District of New York—where the other first-filed case (filed by Deborah Moss on the same day as Hillick) was pending. Dkt. 139. Hillick has since joined Moss's case in the Eastern District of New York as an additional plaintiff.[2] For the reasons set forth below and in BMO Harris's opening brief, Graham's claims against BMO Harris here should be sent to the Eastern District of New York pursuant to 28 U.S.C. § 1404(a).

## ARGUMENT

28 U.S.C. § 1404(a) provides that "a district court may transfer any civil action to any other district or division where it might have been brought" "in the interest of justice" and "[f]or the convenience of parties and witnesses." Graham concedes that his action could have been filed in the Eastern District of New York. Dkt. 154 ("Pltf. Resp.") at 5; *see also* BMO Harris Br. at 6-7. Accordingly, the only issue in dispute is whether transferring Graham's case is warranted in the interest of justice and for the convenience of parties and witnesses.

**I.     The Interest Of Justice And Judicial Economy Strongly Favor Transfer.**

As BMO Harris explained in its opening brief (at 7-13), under both § 1404(a) and the first-filed rule, related cases involving substantially similar parties and claims should be transferred for coordination in a single district. Indeed, this Court has repeatedly recognized the wastefulness of litigating related claims in separate districts at once. *See Air Express Int'l Corp. v. Consol. Freightways, Inc.*, 586 F. Supp. 889, 893 & n.4 (D. Conn. 1984); *Cavanaugh v.*

---

[2] *See* Amended Complaint, Dkt. 38, *Moss v. BMO Harris Bank, N.A.*, Case No. 13-cv-5438 (E.D.N.Y.) (Ex. A).

*Bluebeard's Castle, Inc.*, 83 F. Supp. 2d 284, 288 (D. Conn. 1999); *Accelinear Serv. Co. v. Varian Assoc.*, 1996 WL 776580, at *4 (D. Conn. Oct. 16, 1996).

As BMO Harris also explained, these copycat cases involve closely overlapping parties and claims. BMO Harris Br. at 9-10. When BMO Harris initially moved to transfer this case, Hillick, Moss, Graham, and plaintiffs in several other cases were all seeking to represent the same 14-state class of borrowers in states that ban payday loans. After BMO Harris moved to transfer, and at the same time Hillick joined Moss's case, the plaintiffs amended the *Moss* complaint to limit the putative class, at least for now, to New York borrowers. Importantly, however, Graham (as well as the plaintiffs in five other pending cases) still seek to represent a 14-state class, *including New York borrowers*. See, e.g., *Graham* Compl. ¶¶ 4, 114(i).[3] As a result, the putative classes at issue here and in *Moss* still overlap.

The claims overlap as well. BMO Harris's alleged misconduct is the same in each case— purportedly facilitating payday loans by processing ACH debits. Thus, most of Graham's complaint is copied and pasted from *Hillick* and *Moss*, including the statements of the case, the general factual allegations, the lead federal RICO claims, and the relief sought, including an injunction prohibiting BMO Harris from processing payments for payday lenders. BMO Harris Br. at 5, 9-10. Indeed, plaintiffs' decision to effectively merge *Hillick* into *Moss* after BMO Harris moved to transfer merely exemplifies the substantial overlap between the cases.

In his response, Graham claims that two differences between his case and *Moss* purportedly should defeat transfer. First, Graham notes that *Moss* now involves a New York-only putative class. Pltf. Resp. at 2. But as discussed above, Graham also seeks to represent New York borrowers (along with borrowers in Connecticut and 12 other states). Courts have repeatedly

---

[3] The other five cases are *Parm*, *Dillon*, *Booth*, *Elder*, and *Achey*. The *Gunson* plaintiff limits her claims to Florida borrowers, and the *Riley* plaintiff limits her claims to D.C. borrowers.

held that similar overlap (or less) warrants transfer. *See Fryda v. Takeda Pharm. N. Am., Inc.*, 2011 WL 1434997, at *5 (N.D. Ohio Apr. 14, 2011) (transferring putative class action involving an Ohio-only class to an Illinois district court handling a nationwide putative class); *Byerson v. Equifax Info. Servs.*, 467 F. Supp. 2d 627, 630-31, 636 (E.D. Va. 2006) (finding that although plaintiffs in the transferee venue had amended their complaints to make the putative classes "quite different," "the similarities [between the cases] are more significant than the differences"); *Bunch v. W.R. Grace & Co.*, 2005 WL 1705745, at *4 (E.D. Ky. July 21, 2005) (finding that "[a]lthough the relevant 'class periods' are not identical, they are overlapping such that the *Evans* plaintiffs would constitute a 'subclass' of the *Bunch* plaintiffs"); *Balloveras v. Purdue Pharma Co.*, 2004 WL 1202854, at *1 (S.D. Fla. May 19, 2004) (transferring putative class action involving a Florida-only class to a New York district court that had resolved "related litigation").

Second, Graham argues that his case does not involve "the exact same claims" as *Moss* because his supplemental state law claims are based on the laws of Connecticut, not New York. Pltf. Resp. at 2-3, 8. Graham also argues that BMO Harris "does not purport to show (and does not show) that the statutory law or common law that has developed in the two states is identical." *Id.* at 8. Graham is mistaken—that is not the standard for obtaining transfer. Neither § 1404(a) nor the first-filed rule require "*identical* parties [and issues]" in each case. *See, e.g., Wyler-Wittenberg v. Metlife Home Loans, Inc.*, 899 F. Supp. 2d 235, 244 (E.D.N.Y. 2012).

Accordingly, courts have repeatedly rejected Graham's argument and found that differences in state law claims do not defeat transfer. *See, e.g., id.* at 245 (finding that claims "undoubtedly have significant overlap" despite the fact that the claims arose under New York as opposed to California law); *Abbate v. Wells Fargo Bank, N.A.*, 2010 WL 3446878, at *1, 5 (S.D.

Fla. Aug. 31, 2010) (transferring putative class action asserting Florida law claims because it was "similar enough" to other cases); *Wiley v. Gerber Prods. Co.*, 667 F. Supp. 2d 171, 172-73 (D. Mass. 2009) (finding "overwhelming similarities between the two cases" even though they "invoke the laws of different states"); *Szegedy v. Keystone Food Prods.*, 2009 WL 2767683, at *6 (C.D. Cal. Aug. 26, 2009) ("Although the *Kirsh* action presently pending in . . . Pennsylvania may involve some different legal theories compared to the instant action, it involves similar, if not identical, facts and issues."); *Jamarillo v. DineEquity, Inc.*, 664 F. Supp. 2d 908, 916 (N.D. Ill. 2009) ("The claims in the instant case allege the violation of Illinois consumer fraud statutes and contract claims, whereas the Kansas action is based on alleged violations of federal RICO law. However, though the claims are based on different underlying law, they are substantially similar because they are based on the same underlying facts.").

There is no extraordinary difference between the state law claims at issue here that would warrant a different result. Indeed, all of the claims are based on the same underlying facts. The legal issues themselves are also substantially the same. For example, although state lending laws might contain some differences (e.g., allowable loan amounts, interest rates, and licensing requirements), plaintiffs' claims against BMO Harris do not generally turn on those differences. Instead, plaintiffs allege that BMO Harris purportedly aided and abetted their lenders' violations of those laws. In any state, aiding and abetting liability requires proof that a defendant knew of the violation. Thus, in its Rule 12(b)(6) motion in this and every other case, BMO Harris argues that plaintiffs have not adequately alleged that it knew that the ACH debits at issue involved purportedly usurious loans. *E.g.,* Dkt. 115 at 17-20. As BMO Harris argues, plaintiffs do not include any case-specific knowledge allegations focused on their particular lenders. *Id.* at 17-18. Instead, in their motion to dismiss responses, plaintiffs argue that they plausibly allege

knowledge because various rules require banks to perform due diligence involving all of their customers. *E.g.,* Dkt. 156 at 25-26. Without transfer, nine different courts may have to decide this same aiding and abetting issue.[4]

In arguing that his case is not similar enough to *Moss*, Graham cites a handful of cases. Pltf. Resp. at 6, 10. They are not on point. In *Quinn v. Walgreen Co.*, 2013 WL 4007568, at *1 (S.D.N.Y. 2013), the court declined to apply the first-filed rule to *stay* a later-filed case. The court explained that "[i]mportantly, Walgreens does not seek . . . transfer" and denied a stay because the case did not involve "identical" parties and issues. *Id.* at *4. In *Am. Steamship Owners Mut. Prot. & Indem. Ass'n v. Lafarge N. Am., Inc.*, 474 F. Supp. 2d 474 (S.D.N.Y. 2007), the court simply declined to transfer an insurance coverage dispute to the district where underlying claims were pending. In *Benson v. JPMorgan Chase Bank, N.A.*, 2010 WL 1445532, at *3 (N.D. Cal. Apr. 7, 2010), the court declined to transfer a putative class action because the case in the proposed transferee venue was already closed and the "gravamen" of the complaints was different. That is not the case here. And in *Glazer v. Whirlpool Corp.*, 2008 WL 4490117, at *2 (N.D. Ohio Oct. 1, 2008), the action that the defendant sought to transfer involved an Ohio-only class, leading the court to place "significant weight" on the plaintiff's choice of forum in Ohio. The plaintiff was not also seeking to represent class members in the proposed transferee forum, as is the case here. Moreover, even under the facts at issue in *Glazer*, the same court

---

[4] Contrary to Graham's claim (Pltf. Resp. at 1, 4), there is also nothing "contradictory" about BMO Harris moving to transfer at the same time it seeks to compel Graham to arbitrate his claims. Obviously, one of the key benefits to arbitration is that it is cheaper and quicker than litigation. But if Graham (and other plaintiffs) are ultimately not compelled to arbitrate, it would be far more efficient to resolve their claims in a single district. Indeed, BMO Harris has requested that the Court (and others) consider the motions to transfer first, so that if the motions are granted, one court can decide the arbitration issues. As Graham points out, that analysis may require application of state law, but issues would nonetheless significantly overlap.

(indeed, the same judge) later reached a different result in *Fryda*, 2011 WL 1434997, at *5, and transferred a putative class action involving an Ohio-only class.

Graham also argues that it would be "premature" to assess judicial efficiency. Pltf. Resp. at 4 (citing *Structural Pres. Sys., LLC v. Andrews*, 931 F. Supp. 2d (D. Md. 2013), and *Advanced Fresh Concepts Franchise Corp. v. Lwin Family Co.*, 2004 WL 792840, at *1 (N.D. Ill. Jan. 21, 2004)). That is incorrect. In *Andrews* and *Advanced Fresh Concepts*, there were no related cases pending in the proposed transferee venues. Each court merely found that a bare request for transfer based on convenience would have to wait. Where related cases are involved, however, this Court has repeatedly ordered transfer at the outset. *See Air Express*, 586 F. Supp. at 890; *Accelinear*, 1996 WL 776580, at *1-2; *Cavanaugh*, 83 F. Supp. 2d at 285-86. Indeed, if courts had to wait to transfer related cases, judicial efficiency gains would be lost.

Finally, although Graham notes that some of the cases cited by BMO Harris go on to discuss additional transfer factors (Pltf. Resp. at 10-11), it is well settled that "[c]onsideration of the interest of justice, which includes judicial economy, may be determinative to a particular transfer motion, even if the convenience of the parties and witnesses may call for a different result." *Amazon.com v. Cendant Corp.*, 404 F. Supp. 2d 1256, 1261 (W.D. Wash. 2005) (citation omitted); *see also Freeman v. MML Bay State Life Ins. Co.*, 2010 WL 8961440, at *5 (D. Conn. July 15, 2010) ("'[C]ourts consistently recognize that the existence of a related action in the transferee district is a strong factor to be weighed with regard to judicial economy, and may be determinative.'") (citation omitted). The pendency of nine nearly identical putative class actions against BMO Harris in separate district courts is appropriately determinative of transfer here.

## II.     Other Factors Also Favor Transfer Or Are Neutral.

In any event, additional transfer factors do not outweigh the strong interest in litigating related cases together. In his response, Graham claims that of the nine factors courts consider to decide transfer motions, "BMO only addresses one of those factors—judicial efficiency—to the exclusion of all others." Pltf. Resp. at 2. That is false—BMO Harris devoted an entire section of its opening brief to the remaining factors. BMO Harris Br. at 7, 13-15.

As an initial matter, Graham claims that because he resides in Connecticut, his decision to file here is entitled to "great deference." Pltf. Resp. at 9. That is not the rule for multi-state class actions. BMO Harris Br. at 14. Indeed, as the Supreme Court explained in *Koster v. Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 524 (1947), "where there are hundreds of potential plaintiffs, all equally entitled voluntarily to invest themselves with the [litigation] and all of whom could with equal show of right go into their many home courts, the claim of any one plaintiff that a forum is appropriate merely because it is his home forum is considerably weakened." So it is here. Graham seeks to represent a class of borrowers throughout 14 states, including New York. His choice to file in his home forum (and similar choices by plaintiffs in the other copycat cases) is not entitled to great weight.

As BMO Harris explained in its opening brief (at 14-15), many of the remaining public and private interest factors also favor transfer because it is ultimately not convenient for anyone to litigate the same issues in nine courts. *See, e.g., Air Express*, 586 F. Supp. at 893 (explaining in the context of three related cases: "The court cannot conceive of an arrangement more expensive, time consuming, and inconvenient to the parties plaintiff as well as defendant . . . than that advanced by plaintiffs. The concurrent prosecution of these suits . . . would defeat the public and private interests in the most expeditious and inexpensive litigation.").

In discussing additional transfer factors in his response (at 12-16), Graham repeatedly treats this case as if it were a one-off dispute. This paints an incomplete picture. As Plaintiffs themselves stated in opposing BMO Harris's motion to sever:

> a consolidated action will facilitate the resolution of Plaintiffs' claims, promote trial convenience, minimize costs—both for the parties and for the judicial system[,] and ensure consistent rulings. Severance, on the other hand, will force Plaintiffs each to proceed with numerous separate suits. . . .

Dkt. 155 at 9; *see also id.* at 1 ("severing this case would waste time and resources of the parties and the judiciary by forcing the Court to consider the exact same legal issues multiple times—and would very likely result in inconsistent rulings").

Plaintiffs make no effort to reconcile their inherently contradictory positions. Moreover, Plaintiffs made those arguments in the context of trying to join the claims of two different plaintiffs against six unrelated defendants (which, as discussed in BMO Harris's motion to sever, cannot satisfy Rule 20's same transaction or occurrence requirement). The efficiency and fairness of coordinated proceedings is even stronger with respect to transfer because BMO Harris seeks to coordinate virtually identical claims involving *one defendant* in a single district. Notably, although Graham argues that courts in separate districts can still at least coordinate discovery (Pltf. Resp. at 12), that does not address the potential for inconsistent substantive rulings, which, as noted above, Plaintiffs themselves characterize as "very likely." Dkt. 155 at 1; *see also* BMO Harris Br. at 12-13.

Graham does not identify any particular hardship or burden if his case against BMO Harris were transferred a short distance to the Eastern District of New York. As BMO Harris noted in its opening brief (at 3, 5), Graham's counsel is already based in New York. Moreover, if Graham is deposed by BMO Harris, his deposition could certainly still occur in Connecticut.

Thus, although Graham argues that any suggestion that he has more resources that BMO Harris "would be ridiculous," as BMO Harris explained in its opening brief (at 16), its transfer motion is "not a bare request by a corporate defendant for its own convenience and standing only in the face of the Plaintiff's choice of forum, but rather one that presents an opportunity to consolidate litigation involving similar parties and issues." *Fryda*, 2011 WL 1434997, at *6.

Graham concedes that most of the remaining transfer factors do not favor either New York or Connecticut. Pltf. Resp. at 14-16, Sections G-J; *see also* BMO Harris Br. at 15.

One last factor is the familiarity of the forum with governing law. Graham claims that these cases involve "intricacies" of state law. Pltf. Resp. at 13. But as discussed in Part I above, Plaintiffs have not shown that any differences are significant. Thus, for example, although each state has its own lending laws, Graham's and other plaintiffs' claims against BMO Harris largely turn on general principles of aiding and abetting liability. Ultimately, most of the legal issues presented in the nine pending cases will be the same in each case, and it is far more efficient to have one court—instead of nine—decide them.

## CONCLUSION

For the foregoing reasons and those discussed in its opening brief, BMO Harris respectfully requests that the Court transfer Christopher Graham's claims against BMO Harris to the Eastern District of New York, where William Hillick and Deborah Moss are already pursuing substantially overlapping claims.

| | |
|---|---|
| Dated: February 5, 2014 | MAYER BROWN LLP |

                                       By:   <u>/s/A. John P. Mancini</u>
                                                   A. John P. Mancini (No. ct04975)
                                                   1675 Broadway
                                                   New York, New York 10019-5820
                                                   Telephone: (212) 506-2295
                                                   Facsimile: (212) 262-1910
                                                   jmancini@mayerbrown.com

                                                 Lucia Nale (*pro hac vice*)
                                                 Debra Bogo-Ernst (*pro hac vice*)
                                                 71 South Wacker Drive
                                                 Chicago, IL 60606
                                                 Telephone: (312) 782-0600
                                                 Facsimile: (312) 701-7711
                                                 lnale@mayerbrown.com
                                                 dernst@mayerbrown.com

                                               Kevin S. Ranlett (*pro hac vice*)
                                                 1999 K Street, N.W.
                                                 Washington, D.C. 20006-1101
                                                 Telephone: (202) 263-3000
                                                 Facsimile: (202) 263-3300
                                                 kranlett@mayerbrown.com

                                        Attorneys for Defendant BMO Harris Bank, N.A.

## CERTIFICATE OF SERVICE

I hereby certify that on February 5, 2014, a copy of foregoing document was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.

By: */s/A. John P. Mancini*
A. John P. Mancini