# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

CHRISTOPHER GRAHAM, and ) 
ELLEN RUSSO, on Behalf of Themselves )
and All Others Similarly Situated, )
                                                )    Case No. 13-CV-01460
       Plaintiffs, )
                                                )    Judge Warren Eginton
       v. )
                                                )
BMO HARRIS BANK, N.A., )
NATIONAL BANK OF CALIFORNIA, )
N.A., FIRST INTERNATIONAL BANK )
& TRUST, a North Dakota State-Chartered )
Bank, FIRST PREMIER BANK AND TRUST, )
a South Dakota State-Chartered Bank, )
MISSOURI BANK AND TRUST, )
a Missouri State-Chartered Bank, and )
NORTH AMERICAN BANKING )
COMPANY, a Minnesota State- )
Chartered Bank, )
                                                 )
       Defendants. )

## DEFENDANT BMO HARRIS BANK, N.A.'S REPLY IN SUPPORT OF ITS RULE 12(b)(6)-(7) AND 19 MOTION TO DISMISS

A. John P. Mancini (No. ct04975)
MAYER BROWN LLP
1675 Broadway
New York, New York 10019-5820
Telephone: (212) 506-2295
Facsimile: (212) 262-1910
jmancini@mayerbrown.com

Lucia Nale (*pro hac vice*)
Debra Bogo-Ernst (*pro hac vice*)
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606
Telephone: (312) 782-0600
Facsimile: (312) 701-7711
lnale@mayerbrown.com
dernst@mayerbrown.com

Kevin S. Ranlett (*pro hac vice*)
MAYER BROWN LLP
1999 K Street, N.W.
Washington, D.C. 20006-1101
Telephone: (202) 263-3000
Facsimile: (202) 263-3300
kranlett@mayerbrown.com

# TABLE OF CONTENTS

**Page**

INTRODUCTION .................................................................................................1

ARGUMENT ........................................................................................................1

    I.     Plaintiff Failed To Join An Indispensable Party: His Lender................1

    II.    Plaintiff Fails To State A Civil RICO Claim.........................................3

    III.   Plaintiff Fails To State Plausible Claims Under Connecticut Law .......7

         A.    Plaintiff Fails To State Aiding And Abetting Claims ...............7

         B.    Plaintiff Fails To State A Claim For Assumpsit.......................9

         C.    Plaintiff Fails To State An Unfair Trade Practices Act ("CUPTA") Claim ...........................................................9

CONCLUSION ...................................................................................................10

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**CASES**

*Artichoke Joe's v. Norton*,
   216 F. Supp. 2d 1084 (E.D. Cal. 2002) .................................................................2

*Berman v. Morgan Keegan & Co.*,
   455 F. Appx. 92 (2d Cir. 2012) ...........................................................................6

*Biffer v. Capital One Servs., Inc.*,
   2006 WL 387394 (D. Conn. Feb. 15, 2006)........................................................10

*Boris Kucher v. Alternative Treatment Ctr. of Paterson, LLC*,
   2006 WL 2527851 (E.D.N.Y. Aug. 29, 2006) .......................................................7

*Boyle v. United States*,
   556 U.S. 938 (2009) ............................................................................................4

*Bridgeport Hydraulic Co. v. City of Bridgeport*,
   130 A. 164 (Conn. 1925)......................................................................................9

*Calore v. Town of Stratford*,
   2001 WL 58364 (Conn. Super. Ct. Jan. 8, 2001) ..............................................8, 9

*Caribbean Telecomm. Ltd. v. Guyana Tel. & Tel. Co.*,
   594 F. Supp. 2d 522 (D.N.J. 2009).......................................................................1

*Cmty. State Bank v. Strong*,
   651 F.3d 1241 (11th Cir. 2011) ............................................................................7

*Conn. Nat'l Bank v. Giacomi*,
   659 A.2d 1166 (Conn. 1995) ................................................................................8

*Craig v. Driscoll*,
   781 A.2d 440 (Conn. App. Ct. 2001), *aff'd*, 813 A.2d 1003 (Conn. 2003) ............9

*Davis v. Globe Life & Acc. Ins. Co.*,
   2013 WL 5436907 (D. Conn. Sept. 27, 2013).....................................................10

*Davis v. United States*,
   192 F.3d 951 (10th Cir. 1999) ..............................................................................2

*DMG Studio Holdings, Inc. v. N. Bay S. Corp.*,
   2013 WL 3992402 (D. Conn. Aug. 2, 2013).......................................................10

*Dudrow v. Ernst & Young, LLP,*
    1998 WL 800204 (Conn. Super. Ct. Nov. 4, 1998).................................................8, 9

*Durante Bros. & Sons, Inc. v. Flushing Nat'l Bank,*
    755 F.2d 239 (2d Cir. 1985) ..............................................................................3, 4

*El Camino Res. Ltd. v. Huntington Nat'l Bank,*
    722 F. Supp. 2d 875 (W.D. Mich. 2009) .................................................................7

*Ente Nazionale Idrocarburi v. Prudential Sec. Group, Inc.,*
    744 F. Supp. 450 (S.D.N.Y. 1990) .........................................................................1

*Errico v. Stryker Corp.,*
    2010 WL 5174361 (S.D.N.Y. Dec. 14, 2010) .........................................................2

*Jubelirer v. MasterCard Int'l, Inc.,*
    68 F. Supp. 2d 1049 (W.D. Wisc. 1999) .................................................................4

*Kermanshah v. Kermanshah,*
    2010 WL 1904135 (S.D.N.Y. May 11, 2010) .........................................................1

*Multimedia Games, Inc. v. WLGC Acquisition Corp.,*
    214 F. Supp. 2d 1131 (N.D. Okla. 2001) ................................................................2

*People v. Miami Nation Enter.,*
    2014 WL 216318 (Cal. Ct. App. Jan. 21, 2014)......................................................2

*Pieper v. Benerin, LLC,*
    2013 WL 4506164 (E.D.N.Y. Aug. 22, 2013) ........................................................4

*Stanley Ferber & Assocs. v. Northeast Bancorp., Inc.,*
    1993 WL 489334 (Conn. Super. Ct. Nov. 16, 1992).................................................8

*Travelers Indem. Co. v. Household Int'l, Inc.,*
    775 F. Supp. 518 (D. Conn. 1991) .........................................................................1

*United States v. Dennis,*
    458 F. Supp. 197 (E.D. Mo. 1978) .........................................................................5

*United States v. Giovanelli,*
    945 F.2d 479 (2d Cir. 1991) ...............................................................................5, 6

*United States v. Pepe,*
    747 F.2d 632 (11th Cir. 1984) ...............................................................................6

*United States v. Persico,*
    2011 WL 2433728 (E.D.N.Y. June 14, 2011).........................................................6

*Zolfaghari v. Sheikholeslami,*
    943 F.2d 451 (4th Cir. 1991) ................................................................4

**STATUTES**

18 U.S.C. § 891(5) ............................................................................6

18 U.S.C. § 1962(c) .....................................................................3, 5, 7

18 U.S.C. § 1962(d) ..........................................................................3

Conn. Gen. Stat. § 36a-555 ..................................................................8

Conn. Gen. Stat. § 36a-563 ..................................................................7

Conn. Gen. Stat. § 37-4 ......................................................................7

Conn. Gen. Stat. § 42-110b(a) ...............................................................9

**OTHER AUTHORITIES**

Fed. R. Civ. P. 19(c) ........................................................................3

Wright & Miller, Fed. Prac. & Proc. Civ. § 1625 (3d ed.) .....................................3

## INTRODUCTION

Christopher Graham went online and obtained a $300 loan from Tribal Lending Enterprise, which is owned and operated by the Guidiville Indian Rancheria. Graham now believes that his loan was illegal under Connecticut law. But instead of suing his lender, Graham asserts a RICO claim and various state law claims against BMO Harris Bank, N.A. ("BMO Harris") for purportedly processing an ACH debit initiated by his lender, with his authorization. As set forth in BMO Harris's opening brief, Graham cannot established that his suit can proceed without his lender or that he states plausible claims for relief. Nothing in Graham's response saves his claims. As a result, Graham's complaint should be dismissed.

## ARGUMENT

### I.    Plaintiff Failed To Join An Indispensable Party: His Lender.

As BMO Harris explained in its opening brief, Dkt. #115 ("Br.") at 5-7, (1) "a contracting party is the paradigm of an indispensable party," *Travelers Indem. Co. v. Household Int'l, Inc.*, 775 F. Supp. 518, 527 (D. Conn. 1991), and (2) this principle applies not only to traditional contract claims, but also to other claims that challenge a contract's validity. *See, e.g., Kermanshah v. Kermanshah*, 2010 WL 1904135, at *5 (S.D.N.Y. May 11, 2010); *Caribbean Telecomm. Ltd. v. Guyana Tel. & Tel. Co.*, 594 F. Supp. 2d 522, 532 (D.N.J. 2009); *Ente Nazionale Idrocarburi v. Prudential Sec. Group, Inc.*, 744 F. Supp. 450, 459 (S.D.N.Y. 1990).

Graham never addresses BMO Harris's argument in his response. Graham merely cites the general rule—which BMO Harris does not dispute—that a plaintiff is not required to join every joint tortfeasor or co-conspirator. Dkt. 156 ("Opp.") at 6-7. But as noted above, that changes where claims are "inextricably intertwined with and derived from the alleged contractual relationship." *Kermanshah*, 2010 WL 1904135, at *5. Graham's claims against BMO Harris attack his loan agreement with Tribal Lending and require a determination that the agreement

1

violates Connecticut law; Graham also seeks injunctive relief requiring BMO Harris to divert funds otherwise belonging to Tribal Lending. Br. at 7. Graham does not dispute either point. Tribal Lending is therefore a necessary and indispensable party.[1]

Graham offers several other arguments, none of which have merit. First, Graham argues that Tribal Lending does not have a sufficient interest in this case because any defense it might assert is, according to Graham, frivolous. That argument is presumptuous, particularly in light of a recent ruling that similar tribal lenders were immune from an enforcement action seeking to apply state law to their loans. *See People v. Miami Nation Enter.*, 2014 WL 216318 (Cal. Ct. App. Jan. 21, 2014). In any event, as Graham's own authority makes clear, such a "narrow interpretation of the term 'legally protected interest' inappropriately presupposes Plaintiffs' success on the merits." *Davis v. United States*, 192 F.3d 951, 958 (10th Cir. 1999).[2]

Second, Graham argues that Tribal Lending's interests are aligned with BMO Harris's interests. That is not true. BMO Harris is not a payday lender, nor does it share the same interest as Tribal Lending in asserting tribal sovereign immunity. Indeed, there may come a time when BMO Harris is adverse to Tribal Lending. This case does not resemble *Artichoke Joe's v. Norton*, 216 F. Supp. 2d 1084 (E.D. Cal. 2002), where the court held that the Secretary of the Interior, by virtue of his fiduciary relationship with absent tribes, could protect their interests.

Finally, Graham argues that BMO Harris never proves that Tribal Lending cannot be joined. Opp. at 8. That is not BMO Harris's burden. *See, e.g., Errico v. Stryker Corp.*, 2010 WL

---

[1] Indeed, in *Multimedia Games, Inc. v. WLGC Acquisition Corp.*, 214 F. Supp. 2d 1131, 1141 (N.D. Okla. 2001), cited by Graham, the court noted that "it is not uncommon for a court to dismiss an action because a tribe is necessary and indispensable in a case where a plaintiff attempted to litigate matters affecting a tribe without the explicit consent of that Indian nation."

[2] Although Graham now attempts to portray Connecticut law as clear cut, he took a contrary position in opposing BMO Harris's motion to transfer. Dkt. 154 at 11-12 (arguing that this case involves "intricacies" of Connecticut law that are best decided by a Connecticut court).

5174361, at *2 (S.D.N.Y. Dec. 14, 2010) (explaining that once the moving party demonstrates that the absentee has an interest that will be impaired, "[t]he burden then shifts to the opposing party 'to negate this conclusion and a failure to meet that burden will result in the joinder of the party or dismissal of the action'") (citation omitted). Indeed, Graham ignores Rule 19(c), which requires a plaintiff to allege in his complaint "the reasons for not joining" any necessary parties. Fed. R. Civ. P. 19(c).[3] Graham has not done so, and his complaint should be dismissed.

## II.    Plaintiff Fails To State A Civil RICO Claim.

RICO makes it unlawful to "conduct or participate . . . in the conduct of [an] enterprise's affairs through . . . collection of unlawful debt." 18 U.S.C. § 1962(c). Congress enacted this provision to combat loan sharking; "there is no indication that Congress was taking aim at legitimate banking institutions." *Durante Bros. & Sons, Inc. v. Flushing Nat'l Bank*, 755 F.2d 239, 250 (2d Cir. 1985). As BMO Harris explained in its opening brief (at 9), Graham falls far short of stating a claim against BMO Harris under either § 1962(c) or § 1962(d).

First, Graham fails to plead a RICO enterprise. Graham's claim involving the "NACHA legal entity enterprise" fails because Graham does not allege that NACHA—or even any of its members—is "in the business of making usurious loans," as the Second Circuit requires. *Durante Bros.*, 755 F.2d at 250. Graham instead alleges that BMO Harris purportedly "participat[ed] in a scheme" to use the ACH network to collect unlawful debt. Compl. ¶ 1. This allegation mirrors almost exactly the allegation rejected in *Durante Bros.*, 755 F.2d at 250, that "the Bank . . . participated in a scheme or business of making or collecting usurious loans."

---

[3] *See also* Wright & Miller, Fed. Prac. & Proc. Civ. § 1625 (3d ed.) (explaining that Rule 19(c) "poses a tactical dilemma"; "the pleader must consider the possibility that a failure to comply with Rule 19(c), if discovered, . . . might result in a dismissal of the case or lead the court to assume facts damaging to the pleader").

Graham seeks to avoid *Durante Bros.* by arguing in his response that *payday lenders* are "in the business" of usurious lending. Opp. at 14. But Graham does not allege that payday lenders are members of or participate in NACHA. To the contrary, he alleges that payday lenders need banks like BMO Harris in order to access the ACH network. Compl. ¶ 6. Moreover, although illegal conduct can infiltrate a legitimate enterprise, claims involving a "primarily legitimate business" must allege that the purportedly illegal conduct constituted a means of "conducting that business." *Pieper v. Benerin, LLC*, 2013 WL 4506164, at *9 (E.D.N.Y. Aug. 22, 2013); *see also Zolfaghari v. Sheikholeslami*, 943 F.2d 451, 454 n.1 (4th Cir. 1991) ("[C]ases involving legitimate business require . . . proof . . . that the actual 'affairs' of the enterprise were being conducted by the [illegal activity]."). There are no such allegations here.

Graham's association-in-fact "ACH Enterprise" also fails. Again, Graham does not allege that the enterprise is in the business of making usurious loans or that its affairs were conducted by the purportedly illegal activity. In addition, an enterprise cannot comprise the entire financial system. Br. at 11-13. Although Graham now attempts to limit the ACH Enterprise to certain "financial industry" members (Opp. at 18), Graham broadly defined the ACH Enterprise in his complaint to include merchants (such as payday lenders) and customers (such as himself). Compl. ¶¶ 123-24. Thus, according to the complaint, anyone who ever accepted or authorized an ACH debit or credit is part of the enterprise. Such an enterprise falls far short of having the structural features—purpose, relationships among members, and longevity to achieve purpose— required by *Boyle v. United States*, 556 U.S. 938, 946 (2009).[4]

---

[4] Even if Graham were to amend his complaint to narrow the ACH Enterprise to exclude merchants and customers, no one in the purported enterprise would be in the business of making usurious loans. Alternatively, if Graham were to amend his complaint to narrow the ACH Enterprise to include merchants but not customers, such an enterprise would fail as discussed in *Jubelirer v. MasterCard Int'l, Inc.*, 68 F. Supp. 2d 1049 (W.D. Wisc. 1999). *See* Br. at 11-12.

Second, Graham fails to allege that BMO Harris managed or directed the enterprise's affairs through the collection of unlawful debt. In his response, Graham focuses solely on the purported "ACH Enterprise," Opp. at 19-23, apparently abandoning any claim based on the "NACHA legal entity enterprise" despite the fact that he defended it on the "enterprise" element.

Graham's primary theory is that BMO Harris "us[ed] its 'gatekeeper' function as an ODFI to determine which merchants are permitted to originate credit and debit entries on the ACH Network." Opp. at 22. This theory is contrary to RICO's plain language, which requires that a defendant participate in the enterprise's affairs "through . . . collection of unlawful debt." 18 U.S.C. § 1962(c); *see also United States v. Dennis*, 458 F. Supp. 197, 199 (E.D. Mo. 1978). BMO Harris's purported "gatekeeping" role as an ODFI does not establish that it participated in the ACH Enterprise's affairs *through the collection of unlawful debt*. At most, Graham alleges that BMO Harris purportedly enabled others to use the ACH network to collect unlawful debt.

Graham also argues that BMO Harris controlled the operation of the ACH Enterprise as a whole through its alleged ability to influence NACHA. Opp. at 22-23. But Graham does not attempt to tie this alleged participation in NACHA to the purported wrongdoing at issue— collection of unlawful debt. Indeed, Graham alleges that NACHA has adopted rules to keep illicit transactions out of the ACH network, Compl. ¶¶ 45-46, not that BMO Harris has somehow caused NACHA to allow illegal debt collection to infiltrate the ACH network.

Third, Graham fails to allege that BMO Harris "collect[ed]" unlawful debt. RICO does not define "collection," but the Second Circuit has recognized that "[o]bviously, the transmission of money within an organization, regardless of that organization's legality, does not constitute collection of a debt." *United States v. Giovanelli*, 945 F.2d 479, 490 (2d Cir. 1991); Br. at 16.

Notably, Graham's response never addresses *Giovanelli*, which establishes that he fails to state a claim. Graham concedes that he authorized the ACH debit at issue when he first applied for his loan (Compl. ¶ 95), that his lender initiated the debit into the ACH network (*id.* ¶ 123(a)), and that his bank (not BMO Harris) took the money from his account. *Id.* ¶ 43. Meanwhile, Graham alleges that BMO Harris was merely a middleman between his bank and his lender, *within* the ACH Enterprise itself. *Id.* ¶¶ 6, 43. "Obviously," that is not "collection." *Giovanelli*, 945 F.2d at 490; *see also United States v. Persico*, 2011 WL 2433728, at *2 (E.D.N.Y. June 14, 2011) ("each defendant" must be in the business of usurious lending).[5]

Fourth, Graham fails to allege that BMO Harris knew of the purportedly unlawful conduct. In its brief (at 17-19), BMO Harris explained that RICO requires more than recklessness and that Graham does not plead *any* factual matter addressing what BMO Harris purportedly knew about Tribal Lending or the $145 debit to his account.

In his response, Graham calls this argument "absurd[]" because BMO Harris purportedly has duties to know all of its customers. Opp. at 25-27. Tellingly, however, Graham does not cite any authority for the proposition that a *duty to know* equates to or infers *knowledge*. Indeed, courts have repeatedly found otherwise. *See, e.g., Berman v. Morgan Keegan & Co.*, 455 F. Appx. 92, 95 (2d Cir. 2012) ("'Know Your Customer' obligations are, standing alone, far from

---

[5] Graham also misreads *United States v. Pepe*, 747 F.2d 632 (11th Cir. 1984). In *Pepe*, the defendant argued that "collection" required proof of success where "cash actually exchanged hands," not just an attempted collection *Id.* at 673-74. The Eleventh Circuit rejected that argument, noting that such a definition would "mean that a loan shark who killed his victim before the victim could hand over the money could not be charged under the RICO collection of unlawful debt prong." *Id.* at 674. The Eleventh Circuit looked to the Extortionate Credit Transactions Statute—which defines "to collect" as "induc[ing] in any way any person to make repayment" (18 U.S.C. § 891(5))—and concluded that "[w]e think this is a proper definition of the term 'collection' in RICO as well." *Id.* Importantly, the Eleventh Circuit never suggested that if "cash actually exchanged hands," any person who may have touched the cash—whether it "induce[d]" payment or not—would be liable under RICO.

6

sufficient to support a strong inference that [a defendant] had actual knowledge. . . ."); *El Camino Res. Ltd. v. Huntington Nat'l Bank*, 722 F. Supp. 2d 875, 923-24 (W.D. Mich. 2009) ("[C]ourts have routinely rejected the notion that a bank's failure to execute a duty to investigate, whether that duty is alleged to arise from federal regulation or from the bank's own internal policies, somehow satisfies the actual knowledge standard."), *report and recommendation adopted*, 722 F. Supp. 2d 875 (W.D. Mich. 2010), *aff'd*, 712 F.3d 917 (6th Cir. 2013).

Finally, Graham argues that even if his § 1962(c) claim is dismissed, his conspiracy claim can still stand. That is not the case. *See, e.g., Boris Kucher v. Alternative Treatment Ctr. of Paterson, LLC*, 2006 WL 2527851, at *5 (E.D.N.Y. Aug. 29, 2006) ("[B]ecause Plaintiffs' substantive RICO claim fails, Plaintiffs' RICO conspiracy claim must fail as well."). In *Cmty. State Bank v. Strong*, 651 F.3d 1241 (11th Cir. 2011), the Eleventh Circuit recognized a "narrow legal path" that could allow an independent conspiracy claim where a bank actually partnered with a payday lender to *issue* the loan in question. As the court explained, such a claim would require allegations that the bank was not the "true lender" but was still "sufficiently complicit in the illegal act so that it could be deemed a conspirator (e.g., by knowingly and willfully lending its name to sham operation)." There are no such conspiracy allegations here.[6]

## III.   Plaintiff Fails To State Plausible Claims Under Connecticut Law.

### A.      Plaintiff Fails To State Aiding And Abetting Claims.

As BMO Harris noted in its opening brief (at 19), Connecticut courts have yet to recognize a claim for aiding and abetting violations of Connecticut's usury statute, Conn. Gen. Stat. § 37-4, and small loan law, Conn. Gen. Stat. § 36a-563. In his response, Graham never

---

[6] For example, without alleging any factual matter to support a claim that BMO Harris even *knew* of Tribal Lending's purportedly unlawful conduct, Graham cannot state a plausible claim under *Iqbal* and *Twombly* that BMO Harris *conspired* with Tribal Lending.

explains how such a claim exists. The statutes at issue do not expressly provide for aiding and abetting liability and, under Connecticut law, aiding and abetting liability is not presumed. *See generally Conn. Nat'l Bank v. Giacomi*, 659 A.2d 1166, 1172-73 (Conn. 1995) (explaining that the "primary inquiry must be whether [the statute] 'can fairly be interpreted to encompass such [secondary liability] in the first instance'" based on the "'fundamental objective of ascertaining and giving effect to the apparent intent of the legislature'") (citations omitted). Graham has a particularly high hurdle with respect to the small loan law, which broadly exempts banks from even direct liability. *See* Conn. Gen. Stat. § 36a-555; Br. at 20-21.[7]

Even assuming that aiding and abetting liability exists, Graham's claim fails. The parties agree on the basic elements: Graham must allege that BMO Harris was "generally aware of [its] role" (requiring actual knowledge or reckless indifference) and that BMO Harris "knowingly and substantially assist[ed] the principal violation." Br. at 19; Opp. at 30.[8] But contrary to Graham's suggestion (Opp. at 31), courts repeatedly dismiss aiding and abetting claims on the pleadings for failing to adequately allege knowledge. *See, e.g., Dudrow v. Ernst & Young, LLP*, 1998 WL 800204, at *6 (Conn. Super. Ct. Nov. 4, 1998); *Stanley Ferber & Assocs. v. Northeast Bancorp., Inc.,* 1993 WL 489334, at *6 (Conn. Super. Ct. Nov. 16, 1992); *see also Calore v. Town of Stratford*, 2001 WL 58364, at *5 (Conn. Super. Ct. Jan. 8, 2001).

Graham does not plead any facts addressing what BMO Harris purportedly knew about Tribal Lending or the $145 debit to his account that he contends was unlawful. Br. at 17-19, 20;

---

[7] On this latter point, in his response, Graham cites the general rule that a person can be found liable for aiding and abetting even if he could not have been charged with directly violating a statute. Opp. at 32-33. But that does not address the underlying question of whether the legislature intended to create aiding and abetting liability in the first place, particularly where it broadly exempted banks from the coverage of the small loan law.

[8] As BMO Harris noted (Br. at 19 n.5), courts apply a "reckless indifference" standard only to "general awareness," not "knowing and substantial assistance." Graham does not dispute this.

*supra* Part II. Graham claims that he has made "detailed" allegations of actual knowledge (Opp. at 31), but even a cursory review shows that the allegations he cites address generic, industry-wide issues, and often merely repeat the elements of a cause of action. Graham also argues that he has alleged that BMO Harris was a "gatekeeper" and purportedly had a duty to know its customers. But allegations that BMO Harris "should have known" are not enough to state a claim. *See Dudrow*, 1998 WL 800204, at *6; *Calore*, 2001 WL 58364, at *5; *see also Craig v. Driscoll*, 781 A.2d 440, 453 (Conn. App. Ct. 2001) ("recklessness" requires "more than a failure to exercise a reasonable degree of watchfulness to avoid danger to others"), *aff'd*, 813 A.2d 1003 (Conn. 2003). Accordingly, Graham's aiding and abetting claims should be dismissed.

### B.   Plaintiff Fails To State A Claim For Assumpsit.

As BMO Harris explained in its opening brief (at 21), Graham cannot use an assumpsit claim to recover funds that BMO Harris never retained or benefitted from in the first place. Graham provides no authority to the contrary. Instead, Graham argues (Opp. at 33) that an assumpsit claim does not require that the defendant currently possess the funds at issue because a defendant cannot, "by spending [the funds], escape the liability to repay." *Bridgeport Hydraulic Co. v. City of Bridgeport*, 130 A. 164, 169 (Conn. 1925). This argument misses the mark. To spend funds, a defendant *at some point* must have actually retained the funds. There are no such allegations here. To the contrary, Graham alleges that BMO Harris processed an ACH debit between his lender and his bank and collected a transaction fee for its services (which Graham is not seeking to recover through his assumpsit claim). Equity cannot compel BMO Harris to return to Graham funds that it never retained, used, or spent. That would be a windfall.

### C.   Plaintiff Fails To State An Unfair Trade Practices Act ("CUPTA") Claim.

Graham's CUPTA claim fails for two reasons. First, CUPTA prohibits "deceptive acts or practices," Conn. Gen. Stat. § 42-110b(a), which requires a plaintiff to allege more than one act.

Br. at 22; *see also Davis v. Globe Life & Acc. Ins. Co.*, 2013 WL 5436907, at *8 (D. Conn. Sept. 27, 2013) ("Having asserted a single act, however, her CUTPA claim must fail."). As Graham notes, there is some split authority on this issue (Opp. at 33), but reading the plural "deceptive acts or practices" to require multiple acts is the better reading of the statute. And Graham cannot satisfy it here—he has identified only one ACH debit that BMO Harris purportedly processed. Although Graham argues that it is "incredible" to suggest that BMO Harris only processed one ACH debit for a payday lender within Connecticut, it is well-settled that a named plaintiff must establish a claim in his own right and cannot rely on absent class members to state a claim. Br. at 17 (citing *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974)). Graham fails to do so.

Second, Graham cannot allege that BMO Harris proximately caused his injuries. The cases Graham cites (Opp. at 35-36) reaffirm that a plaintiff's alleged injuries must flow directly from the defendant's alleged wrongful conduct. *See Biffer v. Capital One Servs., Inc.*, 2006 WL 387394, at *5 (D. Conn. Feb. 15, 2006) (inaccurate credit reporting caused injuries); *DMG Studio Holdings, Inc. v. N. Bay S. Corp.*, 2013 WL 3992402, at *12 (D. Conn. Aug. 2, 2013) (deceptive misrepresentations induced plaintiff to forego other opportunities). Graham alleges that (i) he authorized the ACH debit at issue, (ii) his lender initiated the debit into the ACH network, and (iii) his bank (not BMO Harris) took the money from his account. Although Graham certainly alleges that BMO Harris was one of many "but for" causes of his alleged injury (e.g., it would not have occurred but for BMO Harris's purported role in processing the debit within the ACH network), "but for" causation does not establish *proximate* causation.

## CONCLUSION

For the foregoing reasons and those discussed in its opening brief, Graham's complaint against BMO Harris should be dismissed pursuant to Rules 12(b)(6)-(7) and 19.

10

Dated: February 5, 2014                     MAYER BROWN LLP


                                    By:     _/s/A. John P. Mancini_____
                                            A. John P. Mancini (No. ct04975)
                                            1675 Broadway
                                            New York, New York 10019-5820
                                            Telephone: (212) 506-2295
                                            Facsimile: (212) 262-1910
                                            jmancini@mayerbrown.com

                                            Lucia Nale (*pro hac vice*)
                                            Debra Bogo-Ernst (*pro hac vice*)
                                            71 South Wacker Drive
                                            Chicago, IL 60606
                                            Telephone: (312) 782-0600
                                            Facsimile: (312) 701-7711
                                            lnale@mayerbrown.com
                                            dernst@mayerbrown.com

                                            Kevin S. Ranlett (*pro hac vice*)
                                            1999 K Street, N.W.
                                            Washington, D.C. 20006-1101
                                            Telephone: (202) 263-3000
                                            Facsimile: (202) 263-3300
                                            kranlett@mayerbrown.com

                                            Attorneys for Defendant BMO Harris Bank,
                                            N.A.

11

## CERTIFICATE OF SERVICE

I hereby certify that on February 5, 2014, a copy of foregoing document was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.

By: */s/A. John P. Mancini*
A. John P. Mancini